**Judge Hellerstein**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WEEKS MARINE, INC., individually
and on behalf of a class of all those similarly
situated,

                              Plaintiff,

v.

BRIDGESTONE CORPORATION;
BRIDGESTONE INDUSTRIAL PRODUCTS
AMERICA, INC.; TRELLEBORG
INDUSTRIE S.A.; DUNLOP OIL & MARINE
LTD.; PARKER ITR S.L.R.; MANULI
RUBBER INDUSTRIES S.P.A.; MANULI OIL
& MARINE (U.S.A.) INC.; YOKOHAMA
RUBBER CO., LTD.; PW CONSULTING (OIL
AND MARINE) LTD.; PETER WHITTLE;
DAVID BRAMMAR; BRYAN ALLISON;
JACQUES COGNARD; CHRISTIAN
CALECA; MISAO HIOKI; FRANCESCO
SCAGLIA; and VANNI SCODEGGIO,

                              Defendants.

Civil Action No. _____

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED





1

Plaintiff Weeks Marine, Inc. ("Plaintiff"), individually and on behalf of a class of all those similarly situated, brings this action for treble damages and costs of suit under the antitrust laws of the United States against Defendants Bridgestone Corporation; Bridgestone Industrial Products America, Inc.; Trelleborg Industrie S.A.; Dunlop Oil & Marine Ltd.; Parker ITR S.r.l.; Manuli Rubber Industries S.p.A.; Manuli Oil & Marine (U.S.A.) Inc.; Yokohama Rubber Co. Ltd.; PW Consulting (Oil and Marine) Ltd.; Peter Whittle; David Brammar; Bryan Allison; Jacques Cognard; Christian Caleca; Misao Hioki; Francesco Scaglia; and Vanni Scodeggio (collectively, "Defendants").

## NATURE OF THE CASE

1.     This lawsuit is brought as a class action on behalf of direct purchasers in the United States (other than the United States Department of Defense) of Marine Hose, as the term is defined in this Class Action Complaint (the "Complaint"), who purchased Marine Hose directly from Defendants or their predecessors, parents, subsidiaries, or affiliates from January 1, 1999 to May 2, 2007 (the "Class Period"). During the Class Period, Defendants and their co-conspirators, other than PW Consulting (Oil and Marine) Ltd. and Peter Whittle, manufactured and/or sold Marine Hose, and all Defendants entered into and implemented a continuing contract, combination or conspiracy to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose sold to purchasers in the United States and throughout the world. Because of Defendants' unlawful conduct, Plaintiff and the Class paid artificially inflated prices for Marine Hose, and as a result, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action pursuant to Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

4.      Venue is proper in this Judicial District pursuant to 15 U.S.C.§§ 15(a) and 22 and 28 U.S.C § 1391(b), (c) and (d) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

5.      This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Marine Hose throughout the United States, including this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District. Further jurisdictional contacts are alleged below.

## **DEFINITIONS**

6.      "Class Period" means the period from January 1, 1999 to May 2, 2007.

7.      "Person" means any individual, partnership, corporation, association or other business or legal entity.

8.     "Marine Hose," as the term is used in this Complaint, means flexible rubber hose used to, *inter alia*, transfer oil among or between ships, tankers, terminals, refineries, buoys, offshore mooring systems, onshore storage tanks or storage facilities.

### PLAINTIFF

9.     Plaintiff Weeks Marine, Inc. ("Weeks Marine" or "Plaintiff") is a Corporation with its principal place of business located at Cranford, New Jersey. During the Class Period, Weeks Marine, Inc. purchased Marine Hose directly from one or more of the Defendants or their predecessors, parents, subsidiaries, or affiliates and suffered antitrust injury to its business or property by reason of the antitrust violations alleged herein.

### DEFENDANTS

10.     Defendant Bridgestone Corporation ("Bridgestone") is a Japanese corporation with its principal place of business located at 10-1 Kyobashi 1-chome, Chuo-ku, Tokyo, 104-8340, Japan and is the world's largest tire maker. Bridgestone manufacturers Bridgestone Marine Hose at its Yokohama, Kanagawa Plant and sells, markets and/or distributes its Marine Hose products in the United States and throughout the world from its commercial operations based in Houston, Los Angeles, Tokyo, Kuala Lumpur, Perth and London. Bridgestone's double carcass Marine Hose exceeds the basic requirements of the OCIMF ("Oil Companies International Marine Forum") Hose Guide.

11.     Defendant Bridgestone Industrial Products America, Inc. ("Bridgestone America") is a Delaware corporation with its principal place of business located at 402 BNA Drive, Suite 212, Nashville, TN 37217. Bridgestone America is a wholly owned subsidiary of Defendant Bridgestone Corporation which sells, markets and/or distributes Bridgestone Marine Hose in the Central United States and Latin America from its offices located at 955 Dairy

Ashford, Suite 212, Houston, Texas 77079 and in the Western United States and Canada from its offices located at 30386 Esperanza, Suite 200, Rancho Santa, Margarita, California 92688.

12.    Defendant Trelleborg Industrie S.A. ("Trelleborg") is a French corporation with its principal place of business located at Zl La Combaude, Rue de Chantemerle, FR-63050, Clermont-Ferrand Cedex 02. Trelleborg's "Oil & Marine Product Area" manufactures and distributes its Marine Hose in the United States and throughout the world for all applications related to tanker and FPSP Offshore Offloading, including Reeling, Chute, Catenary, Single, Dual and Double Carcass, Floating Flare, Water Cooling Systems and LPG ("liquefied petroleum gases"). Trelleborg is the wholly owned subsidiary of Trelleborg AB of Stockholm, Sweden, which owns related subsidiaries including Trelleborg CRP Inc., 1902 Rankin Road, Houston, Texas 77073 and 3131 West Little York Road, Houston, Texas 77091, as well as other subsidiaries located in Rutherfordton, NC; Spartanburg, SC; Bristol, IN; Aurora, OH; Randolph, MA; Mansfield, MA; Clearbrook, VA; Castro Valley, CA; Norcross, GA; South Haven, MI; Broomfield, CO; Conshohocken, PA; Eugene, OR; Fort Wayne, IN; Hudson, MA; Lombard, IL; Portland, OR; Somersworth, NH; North Charleston, SC; Torrance, CA; Hartville, OH; Morganfield, KY; Peru, IN; Bloomfield Hills, MI; Sandusky, MI; Carmi, IL; and Salisbury, NC.

13.    Defendant Dunlop Oil & Marine Ltd. ("Dunlop") is a United Kingdom limited liability company with its principal place of business located at Moody Lane, Pyewipe, Grimsby, United Kingdom DN31 2SY. Dunlop manufactures Marine Hose and distributes its Marine Hose in the United States and throughout the world. Dunlop sells Saflote and Safgard brand Marine Hose. Dunlop operates U.S. subsidiaries located in Amherst, NY and Forest Park, GA.

14.    Defendant Parker ITR S.r.l. ("Parker") is an Italian corporation with its principal place of business located at Via G.B. Pirelli 6, Veniano, Italy 22070 and its Oil & Gas Division,

Offshore Engineering & Custom-Built Hose located at Contrada Tamarete – 86026, Ortona (Ch),

Italy. Parker ITR S.r.1. is owned by Parker Hannifin Corporation, an Ohio corporation, with its

principal place of business located at 6035 Parkland Blvd., Cleveland, OH 44124-4141. The hose

manufacturing business of ITR was acquired in February 2002 by the Parker Hannifin

Corporation, which renamed the company Parker ITR S.r.l. The Oil and Gas Business Unit has

been continuously engaged in the manufacture of submarine and floating hoses for cargo transfer

at offshore mooring systems for more than 30 years, claiming to have pioneered the Double

Carcass hoses and large bore LPG hoses. Parker manufacturers Marine Hose at Ortona, Italy

destined for sectors including offshore, onshore, stocking and transport of petroleum products,

and markets its Marine Hose to all areas of the world where offshore oil and LPG cargo transfer

operations take place, including the United States. Parker sells Duplex, Diplex and Ridux brand

Marine Hose.

15.      Defendant Manuli Rubber Industries S.p.A. ("Manuli") is an Italian corporation

with its principal place of business located at Piazza del la Republica, 14/16 - 20124, Milan,

Italy. Manuli has operations in Australia, Brazil, China, the Czech Republic, France, Germany,

Italy, Mexico, Poland, Russia, Singapore, South Korea, the UK and the United States. Manuli

currently manufacturers Marine Hose in its new Oil & Marine Division facilities in Ascoli

Piceno, Italy. It also has a place of business and commercial offices for its Oil & Marine

Division located in Fort Lauderdale, Florida. Manuli's Oil and Marine Group manufactures

suction and discharge, reinforced, large bore, floating and sub-sea Marine Hose in single and

double carcass and according to OCIMF specifications; long-length elastomeric conduits for use

as flow line and dynamic risers for both civilian and military customers; and dock and LPG

hoses, for sale in the United States and throughout the world.

16.    Defendant Manuli Oil & Marine (U.S.A.) Inc. ("Manuli USA") is a Delaware corporation with its principal place of business located at 2755 E. Oakland Park Blvd., Ft. Lauderdale, FL 33306. Manuli USA is a wholly owned subsidiary of Defendant Manuli Rubber Industries S.p.A. and the manufacturer's representative for its parent corporation, which sells, markets and/or distributes Manuli Marine Hose in the United States.

17.    Defendant Yokohama Rubber Co., Ltd. ("Yokohama") is a Japanese corporation with its principal place of business located at 36-11, Simbashi 5-chrome, Minato-ku, Tokyo, 105-8685 Japan. Yokohama is the seventh largest tire manufacturer in the world and has manufactured Marine Hose for 25 years for sale in the United States and worldwide. Yokohama sells Seaflex brand Marine Hose manufactured at its Hiratsuka Factory located in Hiratsuka City, Kanagawa Prefecture, Japan. Yokohama operates a number of U.S. subsidiaries and affiliates largely for tire sales located in Fullerton, CA; Auburn, GA; Louisville, KY; Groveport, OH; Farmington Hills, MI; Salem, VA; Charlotte, NC; Mount Vernon, IL; Versailles, KY; Painesville, OH; and Kent, WA.

18.    Defendant PW Consulting (Oil and Marine) Ltd. is a United Kingdom company with its principal place of business located at 107 Cleethorpe Road, Grimsby, North East Lincolnshire, DN31 3ER, United Kingdom.

19.    Defendant Peter Whittle is an individual who is the principal of defendant PW Consulting (Oil and Marine) Ltd. and is described as "the cartel's consultant coordinator" and was an individual participant in the conspiracy alleged herein at least as early as 1999

20.    Defendant David Brammar is or was the Sales and Marketing Director of Defendant Dunlop. Brammar was an individual participant in the conspiracy alleged herein at least as early as 2000.

21.     Defendant Bryan Allison is or was the Managing Director of the Marine Hose business for Defendant Dunlop. Allison is Defendant Brammar's supervisor and was an individual participant in the conspiracy alleged herein at least since 2002.

22.     Defendant Jacques Cognard is or was the Oil and Marine Manager of Defendant Trelleborg who was involved in the sale of Marine Hose. Cognard was an individual participant in the conspiracy alleged herein since at least 1999.

23.     Defendant Christian Caleca is or was the President of the Industrial Hose Business Unit of Defendant Trelleborg in France. Caleca was an individual participant in the conspiracy alleged herein since at least 2001.

24.     Defendant Misao Hioki is or was an executive involved in the Marine Hose business at Defendant Bridgestone in Japan. Hioki was an individual participant in the conspiracy alleged herein.

25.     Defendant Francesco Scaglia is or was a Product Manager for the Marine Hose business at Defendant Manuli in Italy. Scaglia was an individual participant in the conspiracy alleged herein.

26.     Defendant Vanni Scodeggio is or was the Business Unit Manager for Marine Hose with Defendant Parker ITR Oil & Gas Division, Offshore Engineering & Custom-Built Hose, Contrada Tamarete – 86026, Ortona (Ch), Italy. Scodeggio participated in the conspiracy alleged herein and took over as the executive responsible for Marine Hose pricing at Defendant Parker ITR at least by January of 2007.

## **CO-CONSPIRATORS**

27.     Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegations mean that the corporation engaged in the act, deed or transaction

8

by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

28.     The acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendants' business affairs.

29.     Various other persons, firms and corporations not named as Defendants herein have participated as co-conspirators in the violations alleged herein and have aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## INTERSTATE TRADE AND COMMERCE

30.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

31.     During the Class Period, Defendants sold and shipped substantial quantities of Marine Hose in a continuous and uninterrupted flow of interstate commerce to customers located in the states other than the states or countries in which Defendants produced Marine Hose.

## THE MARINE HOSE INDUSTRY

32.     Marine Hose is flexible rubber hose used to, *inter alia*, transfer oil among or between ships, tankers, terminals, refineries, buoys, offshore mooring systems and onshore storage tanks or storage facilities. Marine Hose is generally between six inches and twenty-four inches in diameter and comes in two basic types: floating, which sits above or on the water, and submarine, when extends beneath the water's surface. Companies involved in the offshore extraction and/or the transportation of petroleum products, including all major oil companies, the

military, marine operators assisting in the offloading of oil from barges and tankers onto land-based terminals, and major shipping companies, purchase Marine Hose.

33.    Much of the technology used in manufacturing Marine Hose was developed in the tire industry, including steel reinforcement of flexible rubber.

34.    The Marine Hose industry is highly concentrated, with just six producers manufacturing the Marine Hose sold to purchasers in the United States and the rest of the world. During the conspiracy, Defendants and their co-conspirators sold hundreds of millions of dollars worth of Marine Hose.

## VIOLATIONS ALLEGED

35.    Beginning at least as early as 1999, and continuing thereafter at least through May 2, 2007, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators participated in a continuing contract, combination or conspiracy in unreasonable restraint of trade to artificially raise, fix, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

36.    In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Marine Hose in United States and throughout the world. These activities included:

a.    Communicating with one another to discuss prices, customers, markets, market shares and price levels of Marine Hose sold in the United States and worldwide;

b.    Agreeing to charge prices for Marine Hose at specific levels, to allocate customers and markets and otherwise fixing, increasing, maintaining or stabilizing the prices of Marine Hose sold to purchasers in the United States and worldwide; and

c.    Selling Marine Hose to customers throughout the United States and worldwide at anticompetitive price levels artificially inflated by the contract, combination or conspiracy.

37.    On May 2, 2007, the U.S. Department of Justice ("DOJ") announced that seven executives from the United Kingdom (U.K.), France and Italy were arrested in Houston where they were in attendance at the annual Offshore Technology Conference, and one Japanese executive was arrested in San Francisco, and charged for their role in an international conspiracy to rig bids, fix prices, and allocate markets and customers for the sale of Marine Hose in the United States and worldwide.

38.    Also on May 2, 2007, a criminal complaint was unsealed in U.S. District Court in Miami, against four executives: Peter Whittle, owner of the U.K.-based consulting firm PW Consulting (Oil and Marine) Ltd. who functioned as the coordinator of the conspiracy; Bryan Allison, Managing Director of the Marine Hose business of Dunlop Oil & Marine Ltd. through at least 2007; David Brammer, Sales and Marketing Director of Dunlop Oil & Marine Ltd. through at least 2006; and Jacques Cognard, Oil & Marine Manager of Trelleborg Industrie S.A. in France through at least 2007.

39.    The DOJ further filed a separate criminal complaint on May 1, 2007 in U.S. District Court in Fort Lauderdale against four additional executives: Christian Caleca, the President of the Industrial Hose Business Unit of Trelleborg Industrie S.A. in France; Vanni Scodeggio, a business unit manager at Parker ITR S.l.r. in Italy; Francesco Scaglia, a product

manager of Manuli Rubber Industries S.p.A. in Italy; and Misao Hioki, an executve involved in the sale of Marine Hose for Bridgestone Corporation in Japan. According to the criminal complaints, the charged executives participated in the conspiracy at various times during the period from at least 1999 to the present.

40.     Simultaneous with the May 2 arrests, agents of the Defense Criminal Investigative Service (DCIS) of the Department of Defense's Office of Inspector General executed search warrants at locations across the United States. Competition authorities abroad, including the Office of Fair Trading in the U.K., the European Commission, and the Japanese Fair Trade Commission, also raided Defendants' offices in Europe and Japan.

41.     On May 7, 2007, Defendant Yokohama Rubber Company disclosed that it was under investigation by Japan's Fair Trade Commission for an alleged price fixing conspiracy in the Marine Hose industry. The head office of Yokohama and the Hiratsuka factory in Japan were subjected to on-site inspections. Bridgestone and Yokohama are the largest players in the Marine Hose market in Japan. News articles reported that Bridgestone and Yokohama were suspected of colluding for the past several years in an international cartel in order to keep the prices for rubber hose high. Yokohama announced on April 26, 2007 that its executives would be attending the 2007 Offshore Technology Conference in Houston, Texas.

42.     Thomas O. Barnett, Assistant Attorney General in charge of the Department's Antitrust Division, was quoting as saying, "Today's arrests, combined with the raids in the U.S. and Europe, demonstrate our ability to work effectively with foreign competition authorities to shut down international cartels. The Antitrust Division will hold accountable executives who engage in illegal cartels, the supreme evil of antitrust."

43.    According to the affidavits filed in support of the criminal complaints and arrest warrants (the "affidavits"), the conspirators met in locations such as Key Largo, Florida, Bangkok, London and Houston, Texas. At these meetings, the conspirators discussed and agreed to the rules for implementing their bid-rigging, price-fixing and allocation scheme.

44.    According to the affidavits, during the conspiracy the participants devised code names to conceal their involvement and communications. In written communications, the conspirators allegedly referred to the cartel as "the club" or the "Technical Committee – Marine Hose."

45.    According to the affidavits, a foreign-based manufacturer of Marine Hose, which company has not been publicly identified, *admitted* the existence of the conspiracy and its involvement in the bid-rigging, price-fixing and market share allocation conspiracy and agreed to cooperate with the government's criminal investigation. This company is known as the "cooperating company."

46.    The affidavits provide that if the cooperating manufacturer abides by the terms of its cooperation agreement with the government, the DOJ will not prosecute it or its cooperating employees, however, "the cooperation agreement will not absolve the cooperating company of restitution obligations it may have to its victims."

47.    The cooperating company has provided "numerous documents" to the DOJ detailing the conspiracy and which confirm and corroborate much of the testimony of the two executives of that company, whose identities are not yet public, and who are known as the "confidential sources" for the government investigation.

48.    One of the confidential sources was, for "many years," the cooperating

company's primary participant in the cartel, and thus had first-hand knowledge of the cartel

activities.

49.    In addition to the two confidential sources, "other employees" of the cooperating

company confirmed the cooperating company's involvement in the cartel from at least 1999

through 2006.

50.    According to the confidential sources, the conspirators reached illegal agreements

to rig bids, fix prices and allocate market shares on "virtually all sales" of Marine Hose from "at

least 1999" through "at least 2006," both worldwide and in the United States.

51.    In addition to "numerous" emails and facsimile documents sent by Whittle to the

cooperating company through at least 2006 in which Whittle provided bidding instructions

regarding upcoming jobs, there is documentary evidence provided to the DOJ of the agendas and

detailed minutes of several meetings of the cartel members. Search warrants were executed on

the Defendants' representatives' hotel rooms in Houston, Texas where the representatives were

present to attend the annual Offshore Technology Conference (the "OTC"), a worldwide

conference of engineers, scientists and managers associated with the ocean resources industry.

The search warrants resulted in the seizure of additional records, documents and materials

relating to Marine Hose bids and prices.

52.    According to the affidavits, the cartel held general meetings on a number of

occasions including: (a) a meeting in London in December 1999 attended by one of the

confidential sources, Whittle and Cognard of Trelleborg; (b) a meeting in December 2000 in

Bangkok attended by Whittle, Brammar of Dunlop, Cognard of Trelleborg and an unidentified

conspirator living in Broward County, Florida; (c) a meeting in June 2001 in Key Largo attended

by Whittle, Brammar of Dunlop, Cognard of Trelleborg and the unidentified conspirator living in Broward County, Florida who hosted the meeting; and (d) a meeting in July 2002 in London attended by Whittle, Brammar and Allison of Dunlop, Cognard of Trelleborg, one of the confidential sources, and the unidentified conspirator living in Broward County.

53.    In these meetings, the cartel members agreed to the rules; discussed how to keep the cartel running smoothly; reviewed and agreed to the market shares allocated to each of the firms; and reviewed and agreed to price lists for Marine Hose.

54.    Emails from Whittle to the cartel members obtained by the government show that Whittle organized in-person meetings during or immediately after the OTC to discuss the Marine Hose conspiracy and, among other things, upcoming prices to quote for Marine Hose jobs.

55.    According to the affidavits, Whittle, a former employee of Defendant Dunlop, was paid by the cartel approximately $300,000 per year to coordinate the conspiracy, with each conspirator corporation contributing about $50,000 per year. The conspiring manufacturers provided Whittle with information about upcoming Marine Hose jobs, and then Whittle, based on the rules agreed to by the conspirators, designated which conspirator would win the job, referring to the winning conspirator as the "champion." Whittle designated the winners of the jobs in a manner sufficient to maintain the market shares agreed to by the conspirators, which were periodically adjusted as needed.

56.    After designating the "champion," Whittle then calculated how much the other cartel members should bid to ensure that the designated champion would win the job.

57.    Whittle sent the conspirators regular reports discussing allocation of previous jobs, pending jobs and the status of current jobs.

58.    Whittle's consulting company had no legitimate business with the cooperating company from at least 2001 to at least 2004, yet the evidence shows the consulting company submitted invoices to the cooperating company for $140,000 between October 2001 and April 2004.

59.    The affidavit filed in support of the criminal complaint charging Caleca, Scodeggio, Scaglia and Hioki alleges that members of the cartel met as recently as May 1, 2007 in a hotel in Houston, Texas for the purpose of carrying out the conspiracy. The proposed agenda for the May 1, 2007 meeting was described in an email from mid-April 2007 and included a discussion of information the cartel members received about upcoming Marine Hose jobs; decisions upon pricing strategies for Marine Hose; discussion of proposals for future cooperation; a review of market conditions; discussion of changes within the Marine Hose industry; and discussion of security measures.

60.    According to the affidavit, the DCIS and FBI conducted court-authorized audio and video surveillance of the May 1, 2007 meeting in Houston attended by Scaglia of Manuli, Caleca of Trelleborg, Whittle, executives from the cooperating company and representatives of another Marine Hose manufacturer which identity has not been made public at this time. Whittle led the meeting and introduced topics of discussion, including "how to keep market prices for marine hose high." "The coordinator highlighted how much higher marine hose prices have been since the conspiracy began compared to the lower prices immediately before the conspiracy." During the meeting, the cartel members discussed improving communications and better and more secure ways to communicate. Finally, the cartel members discussed the rules for implementing their bid-rigging, price-fixing and market allocation scheme, including not bidding against a member who is designated by Whittle to win the job.

61.     According to the affidavit, an email dated June 1, 2001 from Whittle to the cooperating company discloses that Christian Caleca, President of the Industrial Hose Business Unit of Trelleborg which manufactures and sells Marine Hose, was to be the speaker at a dinner of the conspirators in Key Largo in June 2001. During his speech on behalf of Trelleborg, Caleca thanked the co-conspirators for coming to the meeting and noted that "the cartel had caused marine hose pricing to increase since the tough business years of 1998 and 1999." Documents confirm that Caleca flew to Florida on June 11, 2001 and stayed at the hotel in Key Largo identified by one of the confidential sources as the location of the June 2001 meeting.

62.     According to the affidavit, during a May 1, 2007 tape recorded telephone call between Whittle and one of the confidential sources, Whittle stated that Caleca and another Trelleborg executive reporting to Caleca whose identity is not yet public and who also attended the meeting in Key Largo in June 2001, were expected to attend an in-person meeting of the cartel members on May 1, 2007 at the OTC meeting in Houston.

63.     According to the affidavit, one confidential source disclosed, which was corroborated by documents, that Misao Hioki, an executive with Bridgestone involved in the sale of Marine Hose, met with one of the confidential sources and another executive of the cooperating company in or about October 2006. At that meeting Hioki discussed the Marine Hose conspiracy and encouraged the cooperating company's participation. During a meeting of the cartel on May 1, 2007 at the OTC in Houston, Whittle described a private meeting that he had earlier in the day with Hioki. During that meeting, Hioki confirmed that Bridgestone was fully supportive of the Marine Hose conspiracy and that he "wanted to do whatever was necessary to stop the collapse of the market prices for marine hose."

64.    According to the affidavit, one confidential source disclosed, which was corroborated by documents, that Manuli had been a corporate member of the conspiracy since at least 1999. Francesco Scaglia, a Product Manager at Manuli in Italy, attended the May 1, 2007 meeting at the OTC in Houston.

65.    According to the affidavit, both confidential sources disclosed, which was corroborated by documents, that Parker had been a corporate member of the conspiracy since at least 1999. Vanni Scodeggio, a Business Unit Manager with Parker in Italy involved in the sale of Marine Hose, joined the conspiracy at least by January 2007 and attended the meeting at the OTC in Houston on May 1, 2007.

66.    One of the confidential sources tape-recorded a telephone conversation with Whittle in January 2007, where Whittle told the confidential source that Scodeggio wanted to discuss bids on an upcoming Marine Hose job for which it was competing with the cooperating company. Later that month, Scodeggio spoke with one of the cooperating witnesses by telephone, also in a tape-recorded conversation, where Scodeggio suggested that Parker and the cooperating company each subcontract part of the job to each other. Based on other emails from Whittle, Scodeggio was already a member of the conspiracy at the time of the call.

67.    An April 2007 email from Whittle indicates that Scodeggio was then Parker's main representative in the cartel and that Whittle spoke regularly with Scodeggio to keep him informed of the conspiracy's activities. Whittle had no known legitimate business with Parker or Scodeggio. The email further discloses that Scodeggio had replaced a former Parker executive as Parker's main representative in the cartel. This former Parker executive's identity has not been made public, but the executive was formerly in charge of Parker's Marine Hose pricing. According to the confidential sources and confirmed by documents, the former Parker executive

18

was the main representative in the cartel prior to Scodeggio joining the conspiracy, and

Scodeggio took over the former executive's responsibilities for Marine Hose pricing.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

68.     Plaintiff had no knowledge of Defendants' unlawful, continuing, self-concealing

conspiracy and could not have discovered the contract, combination, or conspiracy before May 2,

2007 by the exercise of due diligence, because of the deceptive practices and techniques of

secrecy employed by Defendants to avoid detection of, and fraudulently conceal, their contract,

combination or conspiracy.

69.     According to the affidavits, the conspirators took steps to conceal their

communications with each other and their involvement in the conspiracy. The confidential

sources disclosed, which was confirmed by numerous documents from the cooperating company,

that the conspirators devised code designations to refer to each other in written communications.

For example, Dunlop was designated "B1" and Trelleborg was designated "B2." Parker was

designated "B3" and the conspirator based in Broward County was designated "C." Whittle

continued to use these designations as recently as March 2007. In addition, during their

communications, which was confirmed by documents, the conspirators attempted to conceal

their actions by referring to the cartel as "the club" or the "Technical Committee – Marine

Hose."

70.     Because the contract, combination, or conspiracy was kept secret by Defendants,

Plaintiffs were unaware of the fact that prices of Marine Hose were secretly raised, fixed,

maintained or stabilized as alleged herein.

71.     As a result of the concealment of the conspiracy, Plaintiff asserts the tolling of the

applicable statue of limitations affecting the right of action by Plaintiff.

## CLASS ACTION ALLEGATIONS

72.      Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3)

of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons (excluding Defendants, their predecessors, parents,
> subsidiaries, affiliates, and co-conspirators and the United States
> Department of Defense) in the United States who purchased
> Marine Hose directly from Defendants or any of their
> predecessors, parents, subsidiaries, or affiliates, at any time during
> the period from January 1, 1999 to May 2, 2007.

73.      Plaintiff does not know the exact number of Class members, because such

information is in the exclusive control of Defendants or their co-conspirators. Due to the nature

of the trade and commerce involved, however, Plaintiff believes that Class members number at

least in the hundreds, and are sufficiently numerous and geographically dispersed throughout the

United States so that joinder of all Class members is impracticable.

74.      Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of

the Class members, and Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff is a direct purchaser of Marine Hose and its interests are consistent with, and not

antagonistic to, those of the other members of the Class. In addition, Plaintiff is represented by

counsel who are competent and experienced in the prosecution of antitrust and class action

litigation.

75.      There are questions of law or fact common to the Class, including:

a.      Whether Defendants and their co-conspirators engaged in a contract,

combination, or conspiracy among themselves to fix, raise, maintain or stabilize prices of Marine

Hose, to rig bids or to allocate markets or customers for Marine Hose;

b.      Whether Defendants' contract, combination or conspiracy as alleged in

this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

c.    Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

d.    The effect of Defendants' conspiracy on the prices of Marine Hose sold to purchasers in the United States during the Class Period; and

e.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

76.    These questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

77.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expenses that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

78.    Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

### COUNT 1
### Violation of Section 1 of the Sherman Act – 15 U.S.C. § 1

79.    Beginning at least as early as January 1, 1999 and continuing thereafter through at least May 2, 2007, the exact dates being unknown to Plaintiff, Defendants contracted, combined or conspired to fix, raise, maintain and stabilize prices of Marine Hose in the United States at

artificially high and inflated levels, to rig bids and to allocate Marine Hose markets and customers, all in violation of 15 U.S.C. § 1.

80.    As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged in this Complaint, Defendants have restrained competition in the sale of Marine Hose, and Plaintiff and the other members of the Class have been injured in their business and property in that they paid more during the Class Period for Marine Hose than they otherwise would have paid in the absence of the unlawful conduct of Defendants and their co-conspirators.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A.    That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiffs to be an adequate representative thereof;

B.    That Defendants' unlawful combination, contract, or conspiracy as alleged in this Complaint be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.    That Plaintiff and the Class recover damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.    That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1)    continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting any practice, plan, program or device having a similar purpose or effect; and

(2)    communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of Marine Hose information concerning prices, refraining from selling, customers, markets or other terms or conditions of sale of any such product except to the extent necessary in connection with *bona fide* sales transactions between the parties to such communications.

E.    That Plaintiff and the Class be awarded the expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

F.    That Plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.    That Plaintiff be awarded such additional relief as the Court may deem proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

July 27, 2007

Respectfully submitted,

_____
Robert G. Eisler (RE-1398)
Seth R. Gassman (SG-8116)
COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
150 East 52nd Street
Thirtieth Floor
New York, NY 10022
Phone: 212-838-7797
Fax: 212-838-7745

Michael D. Hausfeld
COHEN, MILSTEIN, HAUSFELD & TOLL,
PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Phone: 202-408-4600
Fax: 202-408-4699

Steven O. Sidener
Joseph M. Barton
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Fax: (415) 777-5189

***Attorneys for Plaintiff Weeks Marine, Inc.***