James H. Mutchnik. P.C. (admitted *pro hac vice*)
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone: (312) 861-2000
Facsimile:  (312) 861-2200

Christopher T. Casamassima (admitted *pro hac vice*)
David I. Horowitz  (DH 0921)
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California  90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEEKS MARINE, INC., individually and on behalf of a class of all those similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BRIDESTONE CORPORATION, BRIDGESTONE INDUSTRIAL PRODUCTS AMERICA, INC., TRELLEBORG INDUSTRIE S.A., DUNLOP OIL & MARINE LTD., PARKER ITR S.L.R., MANULI RUBBER INDUSTRIES S.P.A., MANULI OIL & MARINE (U.S.A) INC., YOKOHAMA RUBBER CO., LTD., PW CONSULTING (OIL AND MARINE) LTD., PETER WHITTLE, DAVID BRAMMAR, BRYAN ALLISON, JAQUES COGNARD, CHRISTIAN CALECA, MISAO HIOKI, FRANCESCO SCAGLIA, and VANNI SCODEGGIO,<br><br>   Defendants. | No. 07 CIV 6811 (AKH)<br><br>ECF case<br><br>**MISAO HIOKI'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S CAUSE OF ACTION** |

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**SUMMARY OF ALLEGATIONS** ......................................................................................1

**ARGUMENT**........................................................................................................................4

**I.    THE COMPLAINT'S ALLEGATIONS REGARDING MR. HIOKI ARE
       INSUFFICIENT UNDER *TWOMBLY* AND *EMPAGRAN*.**......................................4

    A.    The Supreme Court's Recent Decision In *Twombly* Governs The Pleading
             Standard In This Case. ...............................................................................................4

    B.    Plaintiff Must Sufficiently Allege That The Conspiracy Had A Substantial
             Impact On U.S. Commerce. .......................................................................................6

**II.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT MR.
       HIOKI AGREED TO ENTER INTO A PRICE-FIXING CONSPIRACY
       AFFECTING THE UNITED STATES.**..........................................................................8

**CONCLUSION** ...................................................................................................................11

## INTRODUCTION

This Court should dismiss Plaintiff's cause of action for violation of Section 1 of the Sherman Act against Defendant Misao Hioki because the Complaint fails to state a claim upon which relief can be granted, and because Plaintiff's allegations do not establish subject matter jurisdiction.  The Complaint is devoid of any allegation that Mr. Hioki participated in any contract, combination, or conspiracy to restrain trade of marine hose in the United States, and fails to connect Mr. Hioki to any sale of marine hose manufactured in, imported to, or exported from the United States.  Consequently, the Complaint fails to "raise [Plaintiff's] right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), and does not satisfy the jurisdictional requirements of the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA") (requiring foreign commerce to have a "direct, substantial and reasonably foreseeable effect" on U.S. commerce).

## SUMMARY OF ALLEGATIONS

Plaintiff's Complaint names as Defendants seven foreign corporations, eight individuals who are not U.S. citizens or residents — including Mr. Hioki — and two American companies. (*See* Compl. ¶¶ 10-26.)  The two American companies, one of which is Bridgestone Industrial Products America, Inc., do not manufacture marine hose.  Instead, Plaintiff alleges that they distribute marine hose for their foreign parent companies.  (*See* Compl. ¶¶ 11, 16.)  The Complaint alleges a "continuing contract, combination or conspiracy to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose sold to purchasers in the United States and throughout the world."  (Compl. ¶ 1; *see also* Compl. ¶¶ 35, 79.)  The Complaint further alleges that the "Defendants and their co-conspirators engaged in anticompetitive activities," including "[c]ommunicating with one another to discuss prices, customers, markets, market shares and price levels of Marine Hose sold in the United States and

worldwide," and "[a]greeing to charge prices for Marine Hose at specific levels, to allocate customers and markets and otherwise fixing, increasing, maintaining or stabilizing the prices of Marine Hose sold to purchasers in the United States and worldwide." (Compl. ¶ 36.)

Under the applicable pleading standards, discussed below, a Sherman Act plaintiff must plead enough facts to show that broad allegations such as these are not merely speculative. Yet, the Complaint presents scant facts in support of these general allegations, particularly with respect to Mr. Hioki. In the *only* factual allegations specific to Mr. Hioki, the Complaint observes:

- Mr. Hioki "is or was an executive involved in the Marine Hose business at Defendant Bridgestone in Japan." (Compl. ¶ 24); and

- Mr. Hioki met with employees of a "cooperating company" — widely known to Yokohama Rubber — once in 2006, and met with another alleged co-conspirator in a "private meeting" on May 1, 2007. (*See* Compl. ¶ 63.)

These observations fall short of involving Mr. Hioki in an alleged price-fixing conspiracy, let alone one affecting the United States. (*See* Compl. ¶ 63.) There is no allegation that the alleged meeting with the "cooperating company" pertained to the U.S. (*See id.*) Indeed, the reasonable inference is that any such alleged meeting had nothing to do with the United States, given the alleged meeting was among Japanese businessmen in Japan.

The only other fact alleged in Paragraph 63 is telling for what it does not say. It does *not* allege that Mr. Hioki attended the alleged Houston cartel meeting on May 1, 2007 and agreed to fix prices. Instead, the Complaint says that Mr. Hioki met privately with one alleged co-conspirator before the meeting, and that this co-conspirator then purportedly relayed to others that Mr. Hioki was "supportive" of the conspiracy. (*See id.*) Plaintiffs do not allege any other facts to support the inference that Mr. Hioki entered into an agreement with anyone to fix the prices of marine hose sold in the United States.

2

In lieu of further affirmative factual allegations, the Complaint simply points out that criminal complaints were filed against certain of the Defendants, including Mr. Hioki, in early May 2007, and cites to affidavits filed in support of the criminal complaints (but not attached to Plaintiff's Complaint). (*See* Compl. ¶¶ 37–67.) It is, however, black-letter law that "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss." *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984); *see also Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson County Mo.*, 747 F.2d 1195, 1198 (8th Cir. 1984) ("A pleading incorporating allegations from other documents must clarify which statements are to be incorporated."); *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference."); *cf. Harvey M. Jasper Ret. Trust v. IVAX Corp.*, 920 F. Supp. 1260, 1263 (S.D. Fla. 1995) ("[T]he fact that a plaintiff might quote from a corporate document in its pleading without appending such document to the pleading does not permit the defendants to introduce such document where a dismissal is sought pursuant to Rule 12(b)(6)."). As a result, to the extent that Plaintiff intended, without so stating, to adopt allegations contained in filings from the criminal cases — which are hearsay in any event — this Court should consider only the parts of those filings that are expressly referenced in the Complaint.

Regardless, the only references to Mr. Hioki taken from the affidavit are that he was the subject of a criminal complaint, and the two allegations discussed above: that he met once with an alleged co-conspirator in Houston, and met another time with [Japanese] employees of a "cooperating company" [in Japan]. (*See* Compl. ¶¶ 39, 63.) The affidavit itself makes clear that Mr. Hioki did ***not*** attend any alleged cartel meetings.

3

These references to criminal filings do not satisfy Plaintiff's pleading burden. Even assuming that Plaintiff meant to incorporate the cited criminal allegations, none of the alleged facts connects Mr. Hioki to any price-fixing activity affecting marine hose sales in the United States. In fact, they support the reasonable inference that Mr. Hioki did not participate in any such alleged activity. As a result, the factual allegations in the Complaint are insufficient to support a Sherman Act claim against Mr. Hioki.

## ARGUMENT

**I. THE COMPLAINT'S ALLEGATIONS REGARDING MR. HIOKI ARE INSUFFICIENT UNDER *TWOMBLY* AND *EMPAGRAN*.**

**A. The Supreme Court's Recent Decision In *Twombly* Governs The Pleading Standard In This Case.**

In May of this year, the Supreme Court held that in order to survive a motion to dismiss, a Sherman Act claim must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 127 S. Ct. at 1959. In "retiring" the pleading standard articulated in *Conley v. Gibson,* 355 U.S. 41, 47 (1957), the *Twombly* Court held that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 1966, 1969 (holding that the "no set of facts" test "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 1964-65 (internal citations omitted). The factual allegations of the challenged complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. This pleading requirement includes the burden to allege sufficient facts to establish subject matter jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287

4

n.10 (1938) ("It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.").

Applying *Twombly*, the Second Circuit in *In re Elevator Antitrust Litigation*, No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir.), recently explained that a complaint that simply "enumerates 'basically every type of conspiratorial activity that one could imagine … in entirely general terms without any specification of any particular activities by any particular defendant'" is insufficient to survive a Rule 12(b)(6) motion.  Specifically, the *In re Elevator* plaintiffs asserted that, in furtherance of an alleged conspiracy, the defendants had:

> (a) Participated in meetings in the United States and Europe to discuss pricing and market divisions;
>
> (b) Agreed to fix prices for elevators and services;
>
> (c) Rigged bids for sales and maintenance;
>
> (d) Exchanged price quotes;
>
> (e) Allocated markets for sales and maintenance;
>
> (f) "Collusively" required customers to enter long-term maintenance contracts; and
>
> (g) Collectively took actions to drive independent repair companies out of business.

*Id*. at *2 n.5.  The court rejected these allegations as "'nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever.'"  *Id*. at *2. The Complaint here provides little support for the requirement that Mr. Hioki agreed to participate in a conspiracy, let alone one that was targeted at the United States.  The Complaint's broad allegations of a contract, combination, or conspiracy, are nothing more than "labels and conclusions."  Standing alone, these "formulaic recitation[s] of the elements" of a Sherman Act

5

violation cannot withstand a motion to dismiss under *Twombly*. *See, e.g.*, *In re Elevator*, 2007 WL 2471805, at *1 (finding insufficient plaintiffs' allegations that defendants agreed "to suppress and eliminate competition in the sale and service of elevators by fixing the price of elevators [and] replacement parts and services, rigging bids for contracts for elevator sales, allocating markets and customers for elevators sales and maintenance services, and rigging bids for contracts for elevator maintenance and repair services").

      B.      **Plaintiff Must Sufficiently Allege That The Conspiracy Had A Substantial Impact On U.S. Commerce.**

*We should not impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences within the United States.* *United States v. Aluminum Co. of Am. (Alcoa)*, 148 F.2d 416, 443 (2nd Cir. 1945) (L. Hand, J.) (interpreting territorial reach of the Sherman Act).

Although written more than sixty years ago, Judge Hand's observation quoted above is apt here. Plaintiff has tried to piggy-back off of criminal complaints alleging an essentially foreign conspiracy to bring civil claims against mostly foreign companies and foreign individuals. Plaintiff, however, does not merely have to allege the base elements of the Sherman Act, which prohibits "conspiracy[ies] . . . in restraint of trade." *See* 15 U.S.C. § 1. Plaintiff must satisfy the jurisdictional requirements of the FTAIA.

As described by Justice Breyer, "[t]he Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) … state[s] that the Sherman Act 'shall not apply to conduct involving trade or commerce ... with foreign nations,' 15 U.S.C. § 6a, … then creates exceptions … [for] conduct [that] significantly harms imports, domestic commerce, or American exporters." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004) ("*Empagran*"). Looking to the FTAIA itself, foreign activity only violates the Sherman Act if, in addition to satisfying the normal requirements, the activity has "a direct, substantial, and reasonably foreseeable effect" on domestic or import commerce, and that the effect gives rise to the plaintiff's claims. *See* 15

6

U.S.C. § 6a.  Thus, the Sherman Act "does not prevent . . . business arrangements . . . , however anticompetitive, as long as those arrangements adversely affect only foreign markets." *Empagran*, 542 U.S. at 161.

Under *Twombly* and *Empagran*, Plaintiff needs to articulate the nature of Mr. Hioki's participation in an alleged illegal conspiracy substantially affecting U.S. commerce.  *See Twombly*, 127 S. Ct. at 1965 (requiring that plaintiffs "identify[] facts that are suggestive enough to render a §1 conspiracy plausible").  And a "substantial effect" on U.S. commerce requires something more than merely *some* effect.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (2003) ("The Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.").

Even before *Empagran*, one court acquitted a defendant of criminal price fixing charges in part because of the government's failure to prove a substantial effect on U.S. commerce.  *See U.S. v. Nippon Paper Indus. Co., Ltd.,* 62 F. Supp. 2d 173, 195–96 (D. Mass. 1999) (finding no substantial effect on U.S. commerce because government "cannot claim to have carried its burden of showing that the alleged conspiratorial conduct produced substantial effects in the United States" given that market power of cartel participants and the overall market for thermal fax paper waned throughout the conspiracy).  In *Nippon Paper*, the court found that the defendant had approximately $6 million in sales at the beginning of the conspiracy and that the cartel had a 30% market share of the U.S. thermal fax paper market.  *See id.* at 195.  Nonetheless, the court found that the conspiracy did not have a substantial effect on U.S. commerce because of the collapse of the cartel's market power through the life of the conspiracy.  *See id*. (holding that "a substantial effect on United States commerce cannot simply be assumed to continue because it once existed").  Acknowledging that a plaintiff alleging a foreign

7

conspiracy has an additional burden of alleging substantial harm to U.S. commerce, the court, drawing on First Circuit Authority, termed the plaintiff's proof requirement in a foreign conspiracy case "per se plus." *See id.*

In light of the FTAIA, *Empagran*, *Hartford Fire*, and *Nippon Paper* — all viewed through the lens of *Twombly* — Plaintiffs must sufficiently allege that Mr. Hioki agreed to participate in an illegal price fixing conspiracy that substantially affected U.S. commerce. The Complaint falls well short of this mark.

## II. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT MR. HIOKI AGREED TO ENTER INTO A PRICE-FIXING CONSPIRACY SUBSTANTIALLY AFFECTING THE UNITED STATES.

No Defendant in this litigation manufactures marine hose in the U.S. Nor are any of the individual defendants U.S. citizens or U.S. residents. The Plaintiff does not identify particular sales that occurred here, or projects using marine hose in the United States. Given the foreign flavor of the alleged conspiracy, Plaintiff's Complaint fails to establish a claim, and does not provide a basis for this Court to exercise subject matter jurisdiction.

This failing is especially acute in regards to Mr. Hioki. Plaintiff provides no explanation whatsoever of Mr. Hioki's connection to — or even knowledge of — any allegedly price-fixed U.S. sales. Rather, the Complaint attempts to depict a global conspiracy among marine hose manufacturers, all of whom are foreign. Bridgestone Corporation, Mr. Hioki's employer, is a Japanese corporation based in Tokyo. (Compl. ¶ 10.) Although Bridgestone's U.S. subsidiary is a named Defendant, (*see* Compl. ¶ 11), the Complaint does not allege any connection between Mr. Hioki and Bridgestone's American entity. Rather, it states that Mr. Hioki "is or was an executive involved in the Marine Hose business at Defendant Bridgestone ***in Japan***." (Compl. ¶ 24 (emphasis added).) The mere fact that Mr. Hioki is employed by Bridgestone Corporation

8

in Japan and that Bridgestone Corporation has an American subsidiary does not make Mr. Hioki subject to suit here.

Mr. Hioki is included within Paragraph 30's bald conclusion that all Defendants' actions "substantially affected[] interstate commerce," but the remainder of the Complaint alleges no *facts* to serve as a basis for this conclusion as to Mr. Hioki. As summarized above, the lone paragraph in the complaint dedicated to allegations regarding Mr. Hioki's alleged conduct (Compl. ¶ 63) only alleges that he (a) met with Japanese employees of a Japanese company, presumably in Japan; and (b) did *not* attend the May 1, 2007 cartel meeting, but instead allegedly told a co-conspirator before the meeting that he was "supportive" of the conspiracy.

Simply put, the Complaint gives no reason to infer that Mr. Hioki is involved in sales of marine hose to the United States, or a conspiracy involving U.S. marine hose sales. Thus, even assuming *arguendo* that the Complaint properly alleges that Mr. Hioki was a member of a foreign conspiracy, the Complaint fails to allege how Mr. Hioki allegedly participated in a conspiracy that would be actionable under the Sherman Act, as limited by the FTAIA.

To be sure, the Complaint is replete to references amounting to the allegation that the Defendants allegedly fixed the sale of marine hose to customers in the United States. However, the picture the Plaintiff seeks to paint with this refrain cannot cover up the reality of the essentially foreign nature of the marine hose market, and is belied by a more careful reading of the Complaint.

For instance, none of the Defendants makes marine hose in the United States. Bridgestone manufactures marine hose exclusively in Japan (*see* Compl. ¶¶ 10-11); Trelleborg's manufacturing facilities are in France, although Plaintiff leaves the point ambiguous in the Complaint, and further obscures it by listing off a number of alleged Trelleborg subsidiaries,

9

most of whom have nothing to do with the marine hose business (*see id.* ¶ 12); Plaintiff uses a similar tactic for Dunlop (*see id.* ¶ 13); but then acknowledges that Parker, Manuli, and Yokohama manufacture their marine hose in Italy, Italy, and Japan respectively. *See id.* ¶¶ 14, 15, 17.

As for the individual Defendants, none are U.S. citizens or U.S. residents. All of them live and work abroad for foreign companies. The two American companies named as Defendants in this case allegedly "sell[], market[], ***and/or*** distribute[]" hose in the United States — they do not make it here. (Compl. ¶¶ 11, 16 (emphasis added).) Indeed they do not make marine hose at all. The non-U.S. parent Defendants manufacture the marine hose outside of the United States.

Given this, Plaintiff must more fully explain the extent to which the allegedly price-fixed sales impacted U.S. import commerce. *See In re Elevator*, 2007 WL 2471805, at *3 ("Allegations of anticompetitive wrongdoing in Europe — absent any evidence of linkage between such foreign conduct and conduct here — is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"). For example, were these sales "in the United States" made to U.S. customers? Was the marine hose shipped to the U.S., or was the contract merely negotiated here? More broadly, how big is the U.S. marine hose market? Would sales, even if fixed as alleged, constitute a "substantial" effect on the U.S. economy?

The paragraphs perhaps targeted at the FTAIA's jurisdictional requirements are Paragraphs 30 and 31. But these paragraphs are conclusory boilerplate at its worst. Paragraph 30 states: "The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce." Similarly, Paragraph 31 merely states that "Defendants sold and shipped substantial quantities of Marine

10

Hose in a continuous and uninterrupted flow of interstate commerce to customers located in the states other than the states or countries in which Defendants produced Marine Hose." These allegations are vague to the point of meaninglessness. Their factless, unsupported conclusions fail to satisfy the jurisdictional pleading requirements of the FTAIA and *Twombly*.

The only other paragraphs in the Complaint arguably touching on this issue are the paragraphs identifying the two American corporate Defendants. And these paragraphs merely say that each of these companies "sells, markets and/or distributes . . . Marine Hose in the United States." (*See* Compl. ¶¶ 11, 16.) Without further elaboration, we are left to guess at to what Plaintiff meant with this boilerplate allegation. Do these companies import, export, advertise, negotiate contracts, collect payments, maintain distribution operations "and/or" perform any number of other activities that could be encompassed within this description? As it stands now with this vague description, Plaintiff has not sufficiently alleged the required connection between the alleged conspiracy and U.S. commerce.

## CONCLUSION

Plaintiff's Complaint fails to allege any facts to support the contention that Mr. Hioki participated in a contract, combination, or conspiracy to restrain trade substantially affecting U.S. commerce. As a result, the Complaint fails to satisfy the requirement set forth under *Twombly* and the FTAIA. Accordingly, this Court should dismiss Mr. Hioki from the Complaint.

Dated: September 27, 2007

            Respectfully submitted,

            __s/ James H. Mutchnik P.C.__
            James H. Mutchnik, P.C. (admitted *pro hac vice*)
            KIRKLAND & ELLIS LLP
            200 East Randolph Drive
            Chicago, Illinois 60601
            Telephone: (312) 861-2000
            Facsimile: (312) 861-2200

            Christopher T. Casamassima (admitted *pro hac vice*)
            David J. Horowitz (DH 0921)
            KIRKLAND & ELLIS LLP
            777 South Figueroa Street, 37th Floor
            Los Angeles, California 90017
            Telephone: (213) 680-8400
            Facsimile: (213) 680-8500

            ***Attorneys for Defendant Misao Hioki***