Hal Hardin (Admitted *Pro Hac Vice*)
Harold Donnelly (Admitted *Pro Hac Vice*)
211 Union Street, Suite 200
Nashville, TN 37201
(615) 369-3377

Jeffrey A. Kimmel (JK 0584)
**MEISTER SEELIG & FEIN LLP**
2 Grand Central Tower
140 East 45th Street
19th Floor
New York, NY  10017
(212) 655-3500

*Attorneys for Defendant*
*Bridgestone Industrial Products America, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
WEEKS MARINE, INC., individually and on behalf of itself
and all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | 07 CIV 6811 (AKH) |
|  | ECF Case |

-against-

BRIDGESTONE CORPORATION;  BRIDGESTONE
INDUSTRIAL PRODUCTS  AMERICA, INC.,
TRELLEBORG INDUSTRIE S.S.; DUNLOP OIL &
MARINE LTD.; PARKER ITR S.L.R.; MANULI RUBBER
INDUSTRIES S.P.A.; MANULI OIL & MARINE (U.S.A.)
INC.; YOKOHOMA RUBBER CO., LTD.; PW
CONSULTING (OIL AND MARINE) LTD.; PETER
WHITTLE; DAVID BRAMMER; BRYAN ALLISON;
JACQUES COGNARD; CHRISTIAN CALECA; MISAO
HIOKI; FRANCESCO SCAGLIA; and VANNI
SCODEGGIO,

Defendants.
-----------------------------------------------------------------------X

## DEFENDANT BRIDGESTONE INDUSTRIAL PRODUCTS OF AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................... ii

INTRODUCTION................................................................ 2

ARGUMENT ..................................................................... 2

I.    Applicable Legal Standard................................................. 2

II.   Plaintiff's Conclusory Allegations Fail to State a
      Claim For Relief for Antitrust Violations Under §
      1 of the Sherman Act................................................. 3

III.  BIPA's Relationship to Bridgestone Corporation,
      Japan Provides No Basis for Its Inclusion as a
      Defendant............................................................ 12

      A.   The Complaint Fails to State a Claim Under
           Any Alter Ego Theory of Liability............................... 13

      B.   In the Context of Antitrust Laws, Plaintiff's
           Claim Must Be Dismissed, Because it Fails to
           Show any Independent Action by BIPA ..................... 15

CONCLUSION.................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*American Renaissance Lines, Inc. v. Saxis S.S. Co.,*
    502 F.2d 674 (2d Cir. 1974)....................................................        15

*Associated Gen. Contractors of California v. California State
Council of Carpenters,*
    459 U.S. 519, 103 S.Ct. 897 (1983)........................................        5, 6, 8

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)....................................................        6

*Bell Atlantic Corp. v. Twombly,*
    ___ U.S. __, 127 S.Ct. 1955 (2007).......................................        4, 6, 7, 8, 12

*BellSouth Advertising & Pub. Corp. v. Donnelley Information
Pub., Inc., 719 F. Supp. 1551 (S.D.Fla. 1988), rev'd on other
grounds,* 999 F.2d 1436 (11th Cir. 1993), *cert. denied,* 510 U.S.
1101, 114 S.Ct. 943 (1994)......................................................        17

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,*
    873 F.2d 1357 (10th Cir. 1989) ............................................        3

*Chambers & Barber, Inc. v. General Adjustment Bureau, Inc.,*
    60 F.R.D. 455 (S.D.N.Y. 1973) ............................................        11

*Conley vs. Gibson,*
    355 U.S. 41, 78 S.Ct. 99 (1957).............................................        7

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752, 104 S.Ct. 2731 (1984).....................................        16, 17

*De Jesus v. Sears, Roebuck & Co. Inc.,*
    87 F.3d 65 (2d Cir. 1996)......................................................        15

*DiVittorio v. Equidyne Extractive Industries, Inc.*
    822 F.2d 1242 (2d Cir. 1987) ..............................................        11

*DM Research, Inc. v. College of Am. Pathologists,*
    170 F.3d 53 (1st Cir. 1999)....................................................        5, 6

*Drinkwine v. Federated Publications, Inc.,*
    780 F.2d 735 (9th Cir. 1985), *cert. denied,* 475 U.S. 1087, 106        16
    S.Ct. 1471 (1986)................................................................

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336, 125 S.Ct. 1627 (2005)..................................................    3, 6

*Estate Constr. Co. v. Miller & Smith Holding Co.,*
    14 F.3d 213 (4th Cir. 1994) ...............................................................    5

*Gartner v. Snyder,*
    607 F.2d 582 (2d Cir. 1979)................................................................    14

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.,*
    685 F. Supp. 400 (S.D.N.Y. 1988) .....................................................    17

*Grossman v. Citrus Assocs. of New York Cotton Exch., Inc.,*
    706 F. Supp. 221 (S.D.N.Y. 1989) .....................................................    11

*Heart Disease Research Found. v. General Motors Corp.,*
    463 F.2d 98 (2d Cir. 1972)..................................................................    5

*Invamed, Inc. v. Barr Labs, Inc.,*
    22 F. Supp.2d 210 (S.D.N.Y. 1998).....................................................    10

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)................................................................    6, 7

*Kashfi v. PhibroSalomon, Inc.,*
    628 F. Supp. 727 (S.D.N.Y. 1986) .....................................................    14

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163, 113 S.Ct. 1160 (1993)..................................................    2

*Lombard's Inc. v. Prince Mfg., Inc.,*
    753 F.2d 974 (11th Cir. 1985) ............................................................    5

*Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,*
    992 F.2d 1171 (11th Cir. 1993) ...........................................................    3

*MCI Telecomm. Corp. v. Graphnet, Inc.,*
    881 F. Supp. 126 (D.N.J. 1995) ..........................................................    17

*O'Brien v. National Prop. Analysts Partners,*
    719 F. Supp. 222 (S.D.N.Y. 1989) .....................................................    11

*Okeelanta Power Ltd. Partnership v. Florida Power & Light Co.,*
    766 So.2d 264 (Fla. 4th DCA 2000) ...................................................    17

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
     297 F.3d 1182 (11th Cir. 2002) ................................................ 5

*Papasan v. Allain,*
     478 U.S. 265, 106 S.Ct. 2932 (1986)......................................... 2

*Tal v. Hogan*
     453 F.3d 1244 (10th Cir. 2006) ................................................ 5

*United National Records, Inc. v. MCA, Inc.,*
     616 F. Supp. 1429 (N.D. Ill. 1985) ..................................... 16, 17

*United States v. Bestfoods,*
     524 U.S. 51, 118 S.Ct. 1876 (1998)......................................... 14

*U.S. v. Socony-Vacuum Oil Co.,*
     310 U.S. 150, 60 S.Ct 811 (1940)............................................. 3

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v.*
     *Wood,* 752 A.2d 1175 (Del.Ch.1999)..................................... 15

*Williams v. McAllister Bros., Inc.,*
     534 F.2d 19 (2d Cir. 1976).................................................... 14


**Statutes and Rules**

Fed. R. Civ. P. 8(a)(2).................................................................. 6

Fed R. Civ. P. 9(b) ..................................................................... 11

Fed. R. Civ. P. 12(b)(6)......................................................... 2, 7, 11

15 U.S.C. § 1 ....................................................................... 2, 6, 7, 16

15 U.S.C. § 2 ........................................................................... 17

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, Federal Practice &
Procedure (3d ed. 2004) ......................................................... 3, 5, 6

**INTRODUCTION**

By this motion, defendant, BRIDGESTONE INDUSTRIAL PRODUCTS OF AMERICA, INC. ("BIPA"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), challenges the legal sufficiency of the Complaint and moves this Court to dismiss the Complaint of plaintiff, WEEKS MARINE, INC. ("Plaintiff") as against BIPA. This case arises out of what Plaintiff alleges to be the worldwide participation by manufacturers and/or sellers of Marine Hoses in a massive conspiracy organized for the purpose of unlawfully and artificially inflating the prices of marine hoses and suppression and elimination of competition in such market both worldwide and in the United States from 1999 to May 2, 2007. (Complaint, herein after "Compl. ¶ __," ¶ 1). Plaintiff has purported to set forth against the various seventeen (17) named defendants, a claim for alleged violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. However, Plaintiff's Complaint against Defendant BIPA should be dismissed pursuant Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and failure to provide BIPA with at least minimal notice of the claim against it.

**ARGUMENT**

**I.    Applicable Legal Standard**

The principles governing a district court's evaluation of a motion to dismiss for "failure to state a claim upon which relief can be granted," pursuant to Fed. R. Civ. P. 12(b)(6), are settled and apply to this antitrust complaint. The court "must accept as true all the *factual* allegations in the complaint." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160 (1993) (emphasis added). Likewise, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). Whether such factual allegations are sufficient to show entitlement to relief pled must be

judged in light of the substantive legal standards governing the claim. "[T]he appropriate level of generality for a pleading depends on the particular issue in question or the substantive context of the case before the court." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1218, at 273 (3d ed. 2004) ("Wright & Miller"). What constitutes adequate allegations of fact depend on what plaintiffs "need to *prove*" to state a claim for relief. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346, 125 S.Ct. 1627 (2005). Among other requirements, to successfully withstand a motion for dismissal on a horizontal price-fixing claim under § 1 of the Sherman Act, Plaintiff must allege and prove "(1) the existence of an agreement, combination or conspiracy, (2) among actual competitors (*i.e.,* at the same level of distribution), (3) with the purpose or effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity, (4) in interstate commerce." Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1361 (10th Cir. 1989) (citing U.S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 216-219, 60 S.Ct. 811 (1940). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.    Plaintiff's Conclusory Allegations Fail to State a Claim For Relief for Antitrust Violations Under § 1 of the Sherman Act.

The Plaintiff has not alleged sufficient facts to support a claim under the Sherman Act against BIPA, and none of the various conclusions which appear within this cause of action sufficiently state a claim upon which relief can be granted.

Plaintiff is a corporation with its principal place of business in New Jersey and represents a putative class consisting of all persons or entities who purchased marine hoses from "one or more of the Defendants or their predecessors, parents, subsidiaries, or affiliates" from January 1, 1999 to May 2, 2007. (Compl. ¶¶ 1, 9).

The seventeen (17) Defendants include seven (7) individuals (Brammar, Allison, Cognard, Caleca, Hioki, Scaglia, and Scodeggio) alleged to be agents or employees of six (6) foreign business entities (Bridgestone Corporation of Japan, Trelleborg, Dunlop, Parker, Manuli Rubber, and Yokohama) Plaintiff alleges to be the manufacturers of Marine Hose products worldwide (Compl. ¶¶ 12-17, 20-26, 34); Peter Whittle, the alleged "conspiracy coordinator" and principal of Defendant PW Consulting, a United Kingdom company (Compl. ¶¶ 18-19); and two (2) domestic corporations, Manuli USA and Bridgestone Industrial Products America, Inc. (BIPA), which Plaintiff avers sell, market, and/or distribute marine hoses in the United States. (Compl. ¶¶ 11, 16).

Defendant BIPA is a domestic corporation engaged in the marketing, sale, and distribution of marine hose products in the United States. BIPA is a Delaware corporation doing business in Nashville, Tennessee and a wholly owned subsidiary of Defendant Bridgestone Corporation, a Japanese company.

Plaintiff alleges generally that all seventeen (17) Defendants (along with other unidentified "co-conspirators" not before this Court) (Compl. ¶ 29) "contracted, combined or conspired to fix, raise, maintain and stabilize prices of Marine Hose in the United States at artificially high and inflated levels, to rig bids and to allocate Marine Hose markets and customers." (Compl. ¶ 79). Plaintiff alleges the conspiracy was carried out through a worldwide cartel with the aid of paid coordinator, Defendant Whittle, who designated "bid winners" for upcoming contracts and attempted to maintain alleged "agreed" market shares. (Compl. ¶¶ 19, 55, 56). Plaintiff alleges these activities violate antitrust laws.

Because § 1 of the Sherman Act prohibits "only restraints effected by a contract, combination, or conspiracy. . . [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement." Bell

Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955 (2007) (citations omitted). A complaint under § 1 of the Sherman Act must include sufficient *factual* allegations to support the conclusion that the defendant conspired. This requirement may be satisfied either by (a) making "direct allegations" sufficient to support a claim of conspiracy or (b) making "allegations from which an inference fairly may be drawn by the district court that evidence on these material points will be available and introduced at trial." 5 Wright & Miller § 1216, at 220-27. A bare assertion that the defendant conspired, however, is not enough. See DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55-56 (1st Cir. 1999); see also Associated Gen. Contractors of California v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897 (1983) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

A conclusory allegation of "conspiracy" by Defendant BIPA is insufficient to state a claim in this context. The law requires that the Plaintiff allege facts sufficient to support the conclusion that the conduct alleged (artificial inflation of marine hose prices) was the result of a conspiracy involving BIPA. The existence of a conspiracy, the element of agreement, is a critical element in distinguishing between lawful and potentially unlawful conduct. In claims involving antitrust allegations, the federal courts have rightly insisted that plaintiffs do more than make "bare bones" averments of conspiracy. Lombard's Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985); see also Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006); Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 221 (4th Cir. 1994); Heart Disease Research Found. v. General Motors Corp., 463 F.2d 98, 100 (2d

Cir. 1972).

A pleading of conspiracy requires factual allegations that directly support the existence of an agreement or, failing that, facts that support an inference that defendant BIPA conspired as alleged. <u>See</u> 5 Wright & Miller § 1216, at 220-27. As the First Circuit held in affirming the dismissal of a Section 1 claim, terms like "conspiracy" or even "agreement" are border-line: they may be sufficient in conjunction with a more specific allegations (for instance, identification of a written agreement or even a basis for inferring a tacit agreement), but courts are not required to accept such conclusory terms as a sufficient basis for a complaint. <u>DM Research, Inc.</u>, 170 F.3d at 56 (citation omitted).

Drawing the line between a conclusory allegation and a factual allegation requires exercise of sound judicial judgment. Federal Rules of Civil Procedure 8 and 12 preserve the courts' power "to insist upon some specificity in pleading." <u>Associated Gen. Contractors</u>, 459 U.S. at 528 n.17; <u>see also</u> <u>Dura Pharms</u>, 544 U.S. at 347 (not requiring adequate factual allegations "would permit a plaintiff 'with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence'") (citations omitted).

Recently, in <u>Bell Atlantic Corp. v. Twombly</u>, the United States Supreme Court adopted a higher pleading standard for antitrust litigation, requiring factual allegations sufficient to "raise a right to relief above the speculative level." <u>Id.</u> at 1965-66; <u>accord</u> <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 & n. 2 (2d Cir. 2007); <u>Iqbal v. Hasty</u>, 490 F.3d 143, 158 (2d Cir. 2007). The Court held that Fed. R. Civ. P. 8(a)(2) requires an antitrust complaint to contain sufficient factual allegations to make out a "plausible" right and not just a conceivable or possible right to relief, and the pleading

must raise a reasonable expectation that discovery that will produce evidence to support the claim. Twombly, at 1965.

Twombly considered the notice pleading issue in the context of an antitrust case pursuant to Section 1 of the Sherman Act. The complaint alleged that the defendants conspired to restrain trade by inhibiting the growth of their competitors and by agreeing to refrain from competition against one another, as indicated by their common failure to pursue attractive business opportunities. The only facts alleged to support the key elements of conspiracy were facts showing "parallel" behavior. There were no facts showing actual concerted action. The Court found the complaint must be dismissed "[b]ecause the plaintiffs . . . have not nudged their claims across the line from conceivable to plausible." Id. at 1974; see also Iqbal, 490 F.3d at 157-58 (Twombly requires a "plausibility standard," obligating the plaintiff to "amplify a claim with some factual allegations" necessary "to render the claim *plausible*.")

Plaintiffs can no longer rely upon bare bone conclusory pleadings to survive a motion to dismiss and to delve into the discovery process with the hopes of developing facts to support their claim. Concerned with the ever spiraling cost of discovery that is a burden on the parties, the Twombly court crafted a stricter standard of review for motions to dismiss. Id. at 1967. Heretofore, plaintiffs have been able to rely upon notice pleading to survive a motion to dismiss, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." See Fed. R. Civ. P. 12(b)(6). That standard adopted from Conley vs. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957), was rejected by Twombly, which noted that "after puzzling the professional for 50 years, this famous observation has earned it retirement." Twombly, 127 S.Ct. at 1969.

Twombly requires that the facts plead must be sufficient to make out a "plausible," not just a possible, right to relief, and the pleadings must raise a reasonable expectation that discovery will produce evidence to support the claim. The Court declared that Conley's fair notice/no-set-of-facts formulation was "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 127 S.Ct. at 1960. Although detailed factual allegations may not be necessary, showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." Id. at 1964-65. The pleadings must do more than create a "suspicion [of] a legally cognizable right of action." Id. at 1965. The Court noted that the trial court "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Id. at 1967.

In sum, the Supreme Court's decision in Twombly established two fundamental pleading rules that bear decisively on this case: (1) Plaintiff's complaint must allege facts, not merely conclusions, that show entitlement to relief under the governing substantive antitrust law, and (2) it is the facts alleged in Plaintiff's complaint, not *un-alleged* facts that might later be proved, that must support the claim to relief. See also Associated Gen. Contractors, 459 U.S. at 526 ("[i]t is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged or that defendants have violated the antitrust laws in ways not alleged."). A complaint states a claim under § 1 of the Sherman Act only when there is enough "factual matter" (taken as true) to suggest that an agreement or conspiracy by BIPA existed which caused the purportedly anti-competitive effects alleged by a plaintiff.

As such, when the conclusory allegations of the Complaint are disregarded, Plaintiff fails to meet the pleading standard enunciated in Twombly. Throughout its Complaint, Plaintiff asserts numerous conclusory allegations against the "Defendants"

alleging that each one participated in cartel activities pursuant to a global conspiracy by engaging in unlawful antitrust violations. Upon careful examination, it is clear that the Complaint alleges no facts, either direct or from which an inference may fairly be drawn, that BIPA acted to conspire as alleged and should properly be included in this lawsuit. Plaintiff's stated basis for the allegations derive primarily from the following sources:

(a)    News articles and May, 2007 announcements by the U.S. DOJ of two (2) criminal complaints, arrest warrants, and underlying affidavits charging the eight (8) individual Defendants herein for participation in the alleged conspiracy (*see* Complaint ¶¶ 37- 39, 41-46, 52, 53, 55, 59, and 60- 63).

(b)    Information from the affidavits referring to a "foreign-based manufacturer of Marine Hose" (the "cooperating company") and "confidential sources" related to such company, none of which have been publicly identified, cooperating with the "government's" criminal investigation. (*see* Complaint ¶¶ 45- 51, 62 and 63).

(c)    Other "documentary evidence" in the form of emails, etc. from "confidential sources" the "cooperating company" and/or in the government's possession underlying the various "factual allegations" in the Complaint. (*see* Complaint 47, 51, 54, and 63).

The Complaint relies upon the above three general sources to bolster Plaintiff's conjecture of BIPA's involvement. However, when the conclusory allegations against BIPA are disregarded and the stated "factual allegations" against it are examined, it becomes clear that these sources, even taken as true, provide no basis for including BIPA as a defendant, nor establish any participation by BIPA in the alleged unlawful conduct.

For example, the Plaintiff's "factual" allegations relating to the aforementioned sources are contained in paragraphs 37-67 and 69 of Plaintiff's Complaint, none of which contain a reference, fact, or allegation, either direct or from which an inference may be drawn that: (1) BIPA either conspired or acted as alleged; (2) an agreement or conspiracy by BIPA existed which caused the purportedly anticompetitive effects alleged; (3) BIPA was among the cartel participants; (4) BIPA participated in any meetings; (5) BIPA

reviewed and/or agreed to any market share allocation and price list; (6) any of the criminal complaints or arrest warrants pertained to BIPA; and (7) there is any "plausible" cause of action against BIPA.

When the conclusory assertions in paragraphs elsewhere are disregarded, as they must be, and the Complaint is reduced to the factual allegations actually pleaded, the Complaint is plainly insufficient. The mere allegations by Plaintiff, taken alone, do not state a claim under § 1 of the Sherman Act. Although Plaintiff alleges that each Defendant "contracted, combined or conspired to fix, raise, maintain and stabilize prices of Marine Hose in the United States at artificially high and inflated levels, to rig bids and to allocate Marine Hose markets and customers" (Compl. ¶ 79), the Complaint makes clear that the sole basis for the allegations were the criminal charges and press releases relative to individual and entity Defendants unaffiliated with BIPA.

Plaintiff cannot compensate for its lack of factual basis against BIPA by impermissibly attempting to lump it in with all other Defendants. See, e.g., Invamed, Inc. v. Barr Labs., Inc., 22 F. Supp.2d 210, 221 (S.D.N.Y. 1998) (holding complaint "fails to support the existence of a conspiracy as it presents no facts that might establish any participation by the Affiliates in the alleged conspiracy, save including them within the term 'defendants'"). Though Plaintiff alleges a series of overt acts and a course of conduct by other Defendants which Plaintiff claims evidence their participation in the alleged conspiracy, a single overt act or course of conduct by Defendant BIPA is glaringly absent. Plaintiff alleges no facts directly or indirectly indicating any agreement by BIPA with the other Defendants or with any other alleged nonparty co-conspirator. It further fails to identify a single occasion on which any relevant agreement by BIPA was reached with any co-conspirators, the mechanism for enforcing any such agreement, or

any individual parties connected with BIPA involved in making, enforcing, or carrying out any such agreement.

Plaintiff's failure to allege any concrete role by BIPA in the complained-of conduct is particularly striking in the context of the claims of fraudulent concealment alleged, which are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b):

> Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Id.; see, e.g., Chambers & Barber, Inc. v. General Adjustment Bureau, Inc., 60 F.R.D. 455, 458 (S.D.N.Y. 1973) (Rule 9(b) applies to pleading concealment in an attempt to toll the statute of limitations in antitrust actions).

Pleadings alleging fraud must be stated with particularity. Grossman v. Citrus Assocs. of New York Cotton Exch., Inc., 706 F. Supp. 221, 229 (S.D.N.Y. 1989) (conclusory allegations of participation in a fraudulent scheme or bad faith will not withstand a Rule 12(b)(6) motion to dismiss). Generally speaking, "the circumstances of fraudulent concealment must be alleged with specificity, i.e. the 'who, what, when, where, and how' of the alleged fraud." O'Brien v. National Prop. Analysts Partners, 719 F. Supp. 222, 225 (S.D.N.Y. 1989). Where multiple defendants have been named by a plaintiff alleging fraud, the "complaint must disclose the specific nature of each defendant's participation in the alleged fraud." Id. at 226 (citing DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)). Repeated blanket references to "defendants" are impermissible and insufficient to sustain Plaintiff's allegations of fraudulent concealment by BIPA. See, e.g., O'Brien, 719 F. Supp. at 229 ("Plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against

each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud.").

In averring fraudulent concealment, the Complaint attempts to implicate BIPA by combining the alleged acts of other Defendants and utilizing undifferentiated references to them collectively to create the impression of fraudulent conduct on the part of BIPA. (Compl. ¶¶ 68-71). Again, the allegations of fraudulent concealment in Plaintiff's Complaint against BIPA are insufficient and fail to allege any factual basis for or an inference of fraudulent conduct on the part of BIPA.

Plaintiff's Complaint is similar to the complaint in Twombly. It uses labels, conclusions, and a formulaic recitation of the elements of a cause of action without alleging any facts that would suggest a genuine conspiracy between Defendant BIPA and any other named Defendant or nonparty individual or entity to engage in the acts alleged. Plaintiff makes all sorts of conclusory allegations, but does not factually support them. In short, the Complaint against BIPA is woefully insufficient under the guidelines set out in Twombly.

III.    **BIPA's Relationship to Bridgestone Corporation, Japan Provides No Basis for Its Inclusion as a Defendant.**

When all "factual" allegations are analyzed and those unrelated to BIPA sifted through and disregarded, it becomes apparent that the Complaint attempts to include BIPA as a defendant solely because of its corporate relationship to affiliate Defendant Bridgestone Corporation of Japan. In this regard, Plaintiff asserts allegations of a corporate relationship between BIPA and its parent company:

> 9.    [Plaintiff] . . . "purchased Marine Hose directly from one or more of the Defendants or their predecessors, *parents, subsidiaries, or affiliates*," and thereby "suffered the antitrust injury to its business or property by reason of the antitrust violations alleged herein." (emphasis added).

* * *

11.    Defendant Bridgestone Industrial Products America, Inc. ("Bridgestone America") is a Delaware corporation with its principal place of business located at 402 BNA Drive, Suite 212, Nashville, Tennessee 37217. Bridgestone America is a wholly owned subsidiary of Defendant Bridgestone Corporation which sells, markets and/or distributes Bridgestone Marine Hose in the Central United States and Latin America from its offices located at 955 Dairy Ashford, Suite 212, Houston, Texas 77079 and in the Western United States and Canada from its offices located at 30386 Esperanza, Suite 200, Rancho Santa, Margarita, California 92688.

See Complaint, at ¶¶ 9, 11. Paragraph 11 contains no reference, fact, or allegation, either direct or from which an inference fairly may be drawn, that BIPA acted to conspire as alleged. Further, Plaintiff fails to factually allege any purchase by it of marine hose products from BIPA, except as BIPA is a subsidiary of Defendant Bridgestone Corporation of Japan.

Plaintiff states no factual basis to support that BIPA, its employees, or agents participated in or independently acted to further this alleged antitrust scheme. Stated another way, other than that BIPA is a wholly owned domestic subsidiary of Defendant Bridgestone Corporation of Japan and is engaged in the marketing, distribution and/or sale of marine hose products at issue, Plaintiff fails to set forth any fact or conduct by Defendant BIPA in a context that raises even a suggestion of a preceding agreement to conspire. That averment that BIPA sells, markets, and distributes Bridgestone Corporation of Japan's products is simply not a plausible and sufficient ground to sustain an inference that BIPA was a conspirator participant; it amounts to no more than impermissible speculation.

### A.    The Complaint Fails to State a Claim Under Any Alter Ego Theory of Liability.

Plaintiff attempts to justify the inclusion of BIPA as a named defendant through a "guilt by association" or "alter ego liability" argument, to wit:  BIPA is an industry

participant in the United States and subsidiary of the Defendant Bridgestone Corporation and, thus, should be liable by implication or association. However, § 1 of the Sherman Act deals with federal antitrust policies, and the alter ego doctrine is governed by state corporation law. The two legal principles have different purposes and policy considerations. For instance, a parent creates the subsidiary to shield it from liability rather than for reasons of business efficiency. See, e.g., Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979).

BIPA and Bridgestone Corporation cannot be vicariously liable for each other under an alter ego theory, because the corporations are separate entities engaging in separate activities. See, e.g., United States v. Bestfoods, 524 U.S. 51, 61, 118 S.Ct. 1876 (1998) ("[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation ... is not liable for the acts of its subsidiaries"). In and of itself, a parent company's ownership of all of its subsidiary's stock has been held an insufficient reason to disregard distinct corporate entities. See, e.g., Williams v. McAllister Bros., Inc., 534 F.2d 19, 21 (2d. Cir. 1976) (dismissal of claim appropriate). Even a "bald allegation that a corporation exerts control over the decisions of its wholly owned subsidiary is not sufficient to sustain a claim against the parent corporation." Kashfi v. PhibroSalomon, Inc., 628 F. Supp. 727, 733-34 (S.D.N.Y. 1986).

The corporate veil will be pierced only when the corporate "form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." Gartner, 607 F.2d at 586 (applying New York law); See also Williams, 534 F.2d at 21-22 (to overcome "the 'presumption of separateness' afforded to related corporations," plaintiffs must identify facts that justify piercing the corporate veil: "[a]ctual domination,

rather than the opportunity to exercise control") (applying New York law) (quoting American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 677 (2d Cir. 1974)); Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1184 (Del.Ch.1999) ("[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud"). For instance, in De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69 (2d Cir. 1996) the court held the defendant parent corporation was not a proper party to Plaintiff's RICO claims and dismissal was appropriate where the complaint failed to allege facts from which it may be inferred the parent company either dominated its subsidiary's activities or that the parent company's employees themselves acted to defraud Plaintiff.

Plaintiff makes no allegation that BIPA's corporate existence was a mere sham operation of its parent company and asserts no ground that would justify piercing the corporate veil to hold BIPA liable for the alleged misconduct of its parent. Moreover, Plaintiff fails to assert any specific factual allegation or circumstances supporting the possibility, much less probability, that the alleged antitrust actions of Bridgestone Corporation were in any respect caused by, known to or ratified by BIPA, or that BIPA or its employees fraudulently concealed or participated in the alleged conspiracy. Consequently, the dismissal of Plaintiff's claims against BIPA is warranted.

### B.    In the Context of Antitrust Laws, Plaintiff's Claim Must Be Dismissed, Because it Fails to Show any Independent Action by BIPA.

The principles and policies underlying §1 of the Sherman Act, and federal antitrust policies in general, diverge with state corporation law. A primary concern of the antitrust laws has been to preserve and encourage competition among firms in the same industry, placing limits on collaboration among competing firms. Generally speaking, as the conspiracies condemned by the antitrust laws are those between or among separate

economic entities, a corporation cannot conspire with itself or its employees without the presence of independent parties. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731 (1984) (because a parent company and its wholly-owned subsidiary are one and the same and incapable of conspiring together, no justification for section 1 scrutiny exists). Actionable antitrust conspiracies must involve separate and unrelated entities, not closely held affiliates. Id.

Courts evaluating theories of vicarious liability advanced in the context of antitrust claims have held that it does not follow that because a parent and its wholly-owned subsidiary are legally incapable of conspiring in violation of federal antitrust laws, that one is the alter ego of the other. To the contrary, as a matter of law, a controlling entity is not liable for the antitrust violations of one it controls, absent its own independent, anti-competitive conduct, or a reason for disregarding the corporate form. See, e.g., Invamed, 22 F. Supp.2d at 219 (corporation not liable for actions of affiliate, notwithstanding its ownership and control, absent basis for piercing the corporate veil or independent anti-competitive action by the corporation). In United National Records, Inc. v. MCA, Inc., 616 F. Supp. 1429 (N.D. Ill. 1985), the court discredited an attempt to find an alter ego relationship between companies simply because they are legally incapable of conspiring for antitrust purposes, holding that a parent is not liable for the wrongful acts of its subsidiary simply because the parent wholly owns the subsidiary. Id. at 1432-3; see also Drinkwine v. Federated Publications, Inc., 780 F.2d 735, 741 (9th Cir. 1985), cert. denied, 475 U.S. 1087, 106 S.Ct. 1471 (1986) (a parent corporation is not, without the proffer of a basis for piercing the corporate veil, liable for antitrust violations of its subsidiary). Where a complaint "cannot fairly be read to allege independent action on the part of the [parent]," or to allege "facts" suggesting that the subsidiary "is a 'mere instrumentality' of the parent . . . there is no basis for holding the [parent] liable for the

alleged antitrust violations of [its] subsidiary." Gemco Latinoamerica, Inc. v. Seiko Time Corp., 685 F. Supp. 400, 403 (S.D.N.Y. 1988) (granting motion to dismiss); accord MCI Telecomm. Corp. v. Graphnet, Inc., 881 F. Supp. 126, 131 (D.N.J. 1995) (dismissing a § 2 claim against the defendant because allegations of monopolistic conduct in the complaint related only to conduct by defendant's affiliate); see also Okeelanta Power Ltd. Partnership v. Florida Power & Light Co., 766 So.2d 264, n. 8 (Fla. 4th DCA 2000) (in order to hold a parent corporation liable for the alleged antitrust violations of its subsidiary, an independent act on the part of the parent to affect the relevant market or a basis to pierce the corporate veil must exist). No facts even remotely suggesting such a relationship between BIPA and Bridgestone Corporation of Japan have been alleged in this case.

An antitrust "piercing" issue was also raised in BellSouth Advertising & Pub. Corp. v. Donnelley Information Pub., Inc., 719 F. Supp. 1551 (S.D. Fla. 1988), rev'd on other grounds, 999 F.2d 1436 (11th Cir. 1993), cert. denied, 510 U.S. 1101, 114 S. Ct. 943 (1994). The counter-claimant relied on Copperweld to argue that a parent corporation should be liable automatically for its subsidiary's alleged violation of § 2 of the Sherman Act. The counter-claimant had argued that such liability would be merely the "'flip side' of abolishing the intra-enterprise conspiracy doctrine." Id. at 1567. The Eleventh Circuit, however, strongly rejected the suggestion and refused to apply Copperweld in reverse, holding that the parent corporation must participate affirmatively in the violation to be liable. Id. at 1569 ("[n]o court has yet to interpret the dicta in Copperweld in this manner; and this Court declines to be the first"). The Seventh Circuit in United National Records rejected such an argument as well. See 616 F. Supp. at 1433. There, the court granted summary judgment to a parent corporation who never competed in the relevant market but was sued by plaintiff for its subsidiaries' alleged misconduct. BIPA finds no

case in an antitrust context whereby this established rule of law does not likewise shield a wholly owned subsidiary against allegations of misconduct solely related to a parent company.

## CONCLUSION

Based upon the arguments presented and the authority cited herein, BIPA respectfully requests the Court dismiss Plaintiff's Complaint it in its entirety.

Dated: New York, New York
       September 27, 2007

Respectfully submitted,

**MEISTER SEELIG & FEIN, LLP**


s/ Jeffrey A. Kimmel
Jeffrey A. Kimmel (JK0584)
2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500

-AND-

Hal Hardin (Admitted *Pro Hac Vice*)
Harold Donnelly (Admitted *Pro Hac Vice*)
211 Union Street, Suite 200
Nashville, TN 37201
(615) 369-3377

*Attorneys for Defendant Bridgestone Industrial Products America, Inc.*