UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

WEEKS MARINE, INC., on behalf of itself and
all others similarly situated,

                    Plaintiff,

  vs.

BRIDGESTONE CORPORATION;
BRIDGESTONE INDUSTRIAL PRODUCTS
AMERICA, INC.; TRELLEBORG INDUSTRIE
S.A.; DUNLOP OIL & MARINE LTD.; PARKER
ITR S.L.R.; MANULI RUBBER INDUSTRIES
S.P.A.; MANULI OIL & MARINE (U.S.A.) INC;
YOKOHAMA RUBBER CO., LTD.; PW
CONSULTING INTERNATIONAL LTD.;
PETER WHITTLE; DAVID BRAMMAR;
BRYAN ALLISON; JACQUES COGNARD;
CHRISTIAN CALECA; MISAO HIOKI;
FRANCESCO SCAGLIA; and VANNI
SCODEGGIO

                    Defendants.

No. 07-cv-06811-AKH

-----------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VANNI SCODEGGIO'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

 

**KING & SPALDING LLP**
James M. Griffin
Diana J. Pomeranz
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 737-0500
(202) 626-3737

# **TABLE OF CONTENTS**

PLAINTIFF'S ALLEGATIONS ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

I. PLAINTIFF'S ALLEGATIONS REGARDING MR. SCODEGGIO'S CONDUCT ARE INSUFFICIENT UNDER *TWOMBLY* TO STATE A SECTION 1 CLAIM, BECAUSE THEY FAIL TO SET FORTH PLAUSIBLE GROUNDS THAT MR. SCODEGGIO ENTERED AN AGREEMENT ........................................................ 4

    A.    A Complaint Fails to State a Claim Under Section 1 of the Sherman Act, If It Fails to Plead Sufficient Facts to Allege that an Agreement was Made. .......... 4

    B.    Plaintiff's Complaint Fails to State a Claim Under Section 1 of the Sherman Act Because It Does Not Allege Facts that Mr. Scodeggio Entered into an Agreement. ................................................................................. 6

        1.    Plaintiff's Allegation That Mr. Scodeggio Participated in the May 1, 2007 Meeting is in Conflict With Statements Made Elsewhere in the Complaint and With the Criminal Affidavits Upon Which Plaintiff Bases its Claims. ............................................................ 6

        2.    Plaintiff's Allegations Regarding January 2007 Communications Mentioning or Involving Scodeggio are Insufficient To State a Section 1 Claim Under *Twombly*. ................................................................. 7

        3.    Plaintiff's Allegation that Mr. Scodeggio was Parker's Main Representative in the Cartel is Insufficient To State a Section 1 Claim under *Twombly*. ................................................................................ 9

II. THERE IS NO SUBJECT MATTER JURISDICTION OVER MR. SCODEGGIO BECAUSE PLAINTIFF DOES NOT ALLEGE THAT HIS CONDUCT IN ANY WAY DIRECTLY, SUBSTANTIALLY, AND FORESEEABLY AFFECTED U.S. COMMERCE ............................................................................................................. 10

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Pages**

*Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*
    289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) .................................................................................. 4

*Bayside Rubber & Products, Inc. v. Caleca, et. al.*
    1:07-cv-21784 (S.D. Fla. filed July 11, 2007) ............................................................................... 5

*Bell Atlantic Corp. v. Twombly*
    127 S. Ct. 1955, 1965 (2007) ................................................................. 1, 4, 6, 7, 8, 9, 10, 13

*Car Carriers, Inc. v. Ford Motor Co.*
    745 F.2d 1101 (7th Cir. 1984) ....................................................................................................... 5

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*
    542 U.S. 155 (2004) ............................................................................................................ 11, 12

*Hartford Fire Ins. Co. v. California*
    509 U.S. 764 (1993) ...................................................................................................................... 11

*In re Elevator Antitrust Litigation*
    No. 04 CV 1178, 2006 U.S. Dist. LEXIS 34517 (S.D.N.Y. May 30, 2006) ...................... 9

*In re Elevator Antitrust Litigation*
    No. 06-3128-cv, 2007 U.S. App. LEXIS 21086 (2d Cir. Sept. 4, 2007). ................ 8, 9, 13

*Shipyard Supply LLC, et. al. v. Allison, et al.*
    1:07-cv-21592 (S.D. Fla. filed June 21, 2007) ............................................................................ 5

*United Phosphorus, Ltd. v. Angus Chemical Co.*
    322 F.3d 942 (7th Cir. 2003) ...................................................................................................... 11

*United States v. Nippon Paper Industries Ltd.*
    109 F. 3d 1 (1997) ......................................................................................................................... 11

**Federal Statutes, Regulations and Rules**

Fed. R. Civ. P. 12(b)(6), 12(b)(1) .................................................................................................. 1, 13

Sherman Antitrust Act
    15 U.S.C. § 1 (2007) ................................................................................................... 1, 4, 6, 8

Foreign Trade Antitrust Improvements Act of 1982
    15 U.S.C. § 6 (2007) ............................................................................................. 1, 10, 11, 13

**Journal Articles, Treatises**

Manual for Complex Litigation, Fourth § 30, p. 519 (2004) .......................................................... 5

William H. Wagener, Note, Modeling the Effect of One-Way Fee Shifting on
   Discovery Abuse in Private Antitrust Litigation
   78 N.Y.U. L. Rev. 1887, 1898-99 (2003) ................................................................................ 5

This Court should dismiss Weeks Marine, Inc.'s ("Plaintiff") cause of action for violation of Section 1 of the Sherman Act against Defendant Vanni Scodeggio pursuant to Rules 12(b)(6) and 12(b)(1), Fed. R. Civ. P., because the Complaint fails to state a claim upon which relief can be granted, and because Plaintiff's allegations do not establish subject matter jurisdiction. The Complaint is devoid of any allegation that Mr. Scodeggio participated in any contract, combination, or conspiracy to restrain trade of marine hose in the United States, and fails to connect Mr. Scodeggio to any sale of marine hose manufactured in, imported to, or exported from the United States. Consequently, the Complaint fails to "raise [Plaintiff's] right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), and does not satisfy the jurisdictional requirements of the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a (2007) (requiring foreign commerce to have a "direct, substantial and reasonably foreseeable effect" on U.S. commerce).

## PLAINTIFF'S ALLEGATIONS

Plaintiff filed the Complaint on July 27, 2007 asserting one count against Mr. Scodeggio and his co-Defendants: violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2007). (Compl. ¶¶ 35; 79-80.) Most of the Defendants are either foreign citizens or corporations whose operations in the marine hose industry are located outside the United States. (*Id.* ¶¶ 10-26.) Plaintiff bases the allegations in the Complaint on criminal complaints filed by the U.S. Department of Justice ("DOJ") and the affidavits in support thereof. (*Id.* ¶¶ 37-39, 43-67, 69.) In purely conclusory terms, the Complaint alleges a "continuing contract, combination, or conspiracy to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose sold to purchasers in the United States and throughout the world." (*Id.* ¶ 1; *see also id.* ¶¶ 35, 79.) The Complaint also alleges that Mr. Scodeggio is an Italian national serving as "Business Unit Manager for Marine Hose with Defendant Parker ITR Oil & Gas Division,

Offshore Engineering & Custom-Built Hose, Contrada, Tamarete - 86026, Ortona (Ch), Italy" ("Parker") and that Parker manufactures its Marine Hose in Italy. (*Id.* ¶ 14, 26.) Additionally, Plaintiff alleges that Mr. Scodeggio and his co-Defendants "engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Marine Hose in the United States and throughout the world." (*Id.* ¶ 36.) Furthermore, Plaintiff generally alleges, without any specific factual support as to Mr. Scodeggio, that the Defendants "had substantial contacts with the United States...." (*Id.* ¶ 5.)

While Plaintiff repeatedly alleges that Mr. Scodeggio and his co-Defendants were involved in a conspiracy and make general references to calls, meetings, and e-mails, there are only three allegations that directly refer to Mr. Scodeggio by name.[1] (*Id.* ¶¶ 65-67.) First, Plaintiff alleges that Mr. Scodeggio participated in a May 1, 2007 cartel meeting in Houston during the Offshore Technology Conference ("OTC") "for the purpose of carrying out the conspiracy." (*Id.* ¶¶ 59; 65.) According to the Complaint, the proposed agenda for the meeting included "a discussion of information the cartel members received about upcoming Marine Hose jobs; decisions upon pricing strategies for Marine Hose; discussion of proposals for future cooperation; a review of market conditions; discussion of changes within the Marine Hose industry; and discussion of security measures." (*Id.* ¶59.) Plaintiff's allegations, however, are in conflict with the very source from which they are derived – the criminal complaints and the affidavits in support thereof. Specifically, according to the Thomas H. Errion affidavit ("Errion Affidavit"), DCIS and FBI agents confirmed only that certain other Defendants attended the May 1, 2007 meeting. (Errion Aff. ¶ 30.) Federal agents did not name Mr. Scodeggio as one of the attendees because he was not there. Second, Plaintiff alleges that the alleged cartel coordinator,

---

[1] For purposes of this motion only, Mr. Scodeggio accepts as true all factual allegations of the Complaint, except the mischaracterization concerning Mr. Scodeggio contained in the Complaint, and discussed below.

2

Peter Whittle, told an individual (not identified) from the company cooperating with the DOJ ("Cooperating Company") that Mr. Scodeggio "wanted to discuss bids on an upcoming Marine Hose job." (Compl. ¶ 66.) According to the Complaint, Mr. Scodeggio then spoke with the individual from the Cooperating Company and, "suggested that Parker and the cooperating company each subcontract part of the job to each other." (*Id.*) Finally, Plaintiff alleges that Mr. Scodeggio was Parker's main cartel representative and that Mr. Whittle "spoke regularly with Scodeggio to keep him informed of the conspiracy's activities." (*Id.* ¶ 67.)

As Mr. Scodeggio's employment with Parker began in May 2006, allegations prior to that date, such as those involving meetings between 1999 and May 2006 do not – and cannot – apply to Mr. Scodeggio. Furthermore, the affidavit on which Plaintiff relies for its allegations against Mr. Scodeggio does not identify any activity by Mr. Scodeggio prior to January 2007. (Errion Aff. ¶ 24.)

None of the allegations in the Complaint refer to or identify any conduct by Mr. Scodeggio that had any effect on the United States, except a broad conclusory allegation that the alleged conspiracy affected the price of Marine Hose in the United States and throughout the world. (Compl. ¶ 36.) The Complaint does not contain any specific allegations regarding alleged conduct by Mr. Scodeggio that had a direct, substantial and foreseeable effect on U. S. commerce.

## ARGUMENT

I. PLAINTIFF'S ALLEGATIONS REGARDING MR. SCODEGGIO'S CONDUCT ARE INSUFFICIENT UNDER *TWOMBLY* TO STATE A SECTION 1 CLAIM, BECAUSE THEY FAIL TO SET FORTH PLAUSIBLE GROUNDS THAT MR. SCODEGGIO ENTERED AN AGREEMENT.

    A. <u>A Complaint Fails to State a Claim Under Section 1 of the Sherman Act, If It Fails to Plead Sufficient Facts to Allege that an Agreement was Made.</u>

Under the Supreme Court's holding in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), an allegation of parallel conduct with a bare assertion of conspiracy is insufficient to state a claim under Section 1 of the Sherman Act. *Twombly*, 127 S. Ct. at 1966. In a 7-2 decision, *Twombly* substantially altered the pleading requirements for Sherman Act claims. To survive a motion to dismiss, a plaintiff must make factual allegations providing plausible grounds for the existence of an illegal agreement. *Id.* at 1974 (stating a Section 1 claim must plead sufficient facts as to the defendant to "nudge [plaintiffs'] claims across the line from conceivable to plausible"). In *Twombly*, plaintiffs inferred illegal agreements between competitors from the absence of any meaningful competition between the competitors in the others' markets and from the parallel course of conduct in which each engaged to prevent competition from other sources. *Id.* at 1962-63. The Supreme Court dismissed the complaint, holding that it required "further factual enhancement" underlying the allegations of an illegal agreement in order to survive a motion to dismiss given the "enormous expense of discovery." *Id.* at 1966-67. The Court specifically held that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 1966; *see also Asahi Glass Co. v. Pentech Pharm., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

The Supreme Court has imposed this stricter pleading requirement for good reason. It recognized the apparent fact that antitrust cases are enormously expensive, even as compared to other litigation. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint").[2] This case would be no exception. There are serious issues whether Plaintiff can properly allege or represent a viable class. Already multiple cases have been filed, and there are motions pending before the Judicial Panel on Multidistrict Litigation. *See, e.g.*, *Bayside Rubber & Products, Inc. v. Caleca, et al.*, 1:07-cv-21784 (S.D. Fla. filed July 11, 2007); *Shipyard Supply LLC, et al. v. Allison, et al.*, 1:07-cv-21592 (S.D. Fla. filed June 21, 2007). Most of the seventeen named Defendants are either foreign citizens or corporations whose operations in the marine hose industry are located outside the United States. (Compl. ¶¶ 11-26.) Thus, it is likely that there will be significant discovery issues. Mr. Scodeggio raises these practical considerations recognizing that there are effective tools this Court can use to facilitate an efficient litigation plan, but despite the tools used, there can be no doubt that this will be enormously expensive for Mr. Scodeggio. Thus, Mr. Scodeggio respectfully requests that this Court heed the Supreme Court's advice, that before unleashing the substantial costs that are likely to be necessary for Mr. Scodeggio to defend himself, the Complaint should state a plausible claim against him. Therefore, whatever the allegations may be against any other Defendant, and Mr. Scodeggio takes no position on any other Defendant, there must be sufficient specific factual information

---

[2] *See also* William H. Wagener, Note, Modeling the Effect of One-Way Fee Shifting on Discovery Abuse in Private Antitrust Litigation, 78 N.Y.U. L. Rev. 1887, 1898-99 (2003) (discussing the unusually high cost of discovery in antitrust cases); Manual for Complex Litigation, Fourth § 30, p. 519 (2004) (describing the extensive scope of discovery in antitrust cases).

5

pleaded as to him, before this case goes forward. A careful review of the Complaint demonstrates the necessary factual information is absent here.

### B. Plaintiff's Complaint Fails to State a Claim Under Section 1 of the Sherman Act Because It Does Not Allege Facts that Mr. Scodeggio Entered into an Agreement.

In its Complaint, Plaintiff makes only three allegations specific to Mr. Scodeggio: (1) Plaintiff alleges that Mr. Scodeggio participated in the May 1, 2007 meeting that allegedly furthered the conspiracy; (2) Plaintiff alleges that Mr. Scodeggio spoke with the Cooperating Company in January 2007 about bids and that Mr. Whittle had previously spoken with the Cooperating Company to inform them that Mr. Scodeggio was going to call them on this subject; and (3) Plaintiff alleges that Mr. Scodeggio was Parker's cartel representative. All three of these allegations lack the factual enhancement necessary to survive a motion to dismiss under *Twombly*.

    1.    Plaintiff's Allegation That Mr. Scodeggio Participated in the May 1, 2007 Meeting Conflicts With Statements Made Elsewhere in the Complaint and With the Criminal Affidavits Upon Which Plaintiff Bases its Claims.

In its Complaint, Plaintiff alleges that "the cartel held general meetings on a number of occasions." (Compl. ¶ 52.) Plaintiff identifies the locations, dates and attendees of these meetings, but only names Mr. Scodeggio in connection with one – the May 1, 2007 meeting in Houston, Texas. (*Id.* ¶¶ 59, 65.) Plaintiff alleges that a proposed agenda for the meeting listed pricing strategies and future cooperation as topics for discussion at the May 1, 2007 meeting. (*Id.* ¶ 59.) In Paragraph 60 of the Complaint, Plaintiff does not include Mr. Scodeggio in the list of attendees at the May 1 meeting. Yet in Paragraph 65, Plaintiff alleges that Mr. Scodeggio did attend this meeting. (*Id.* ¶¶ 60, 65.) Specifically, Plaintiff first asserts that the meeting was "attended by Scaglia of Manuli, Caleca of Trelleborg, Whittle, executives from the cooperating

6

company and representatives of another Marine Hose manufacturer" but does not list Mr. Scodeggio as one of the attendees. (*Id.* ¶ 60.) In contrast, however, Plaintiff later alleges that Mr. Scodeggio "attended the meeting at the OTC in Houston on May 1, 2007." (*Id.* ¶ 65.)

Plaintiff relies heavily upon and cites frequently to the Errion Affidavit in framing its Complaint. The Plaintiff specifically alleges that "according to the affidavit…[Mr. Scodeggio]…attended the meeting at the OTC in Houston on May 1, 2007." (Compl. ¶ 65.) However, the Errion Affidavit alleges that only Defendant Francesco Scaglia, Defendant Christian Caleca, another Trelleborg executive who reported to Mr. Caleca, Mr. Whittle, executives from the Cooperating Company, and representatives of another marine hose manufacturer attended the May 1, 2007 meeting. (Errion Aff. ¶ 30.) More importantly, contrary to Paragraph 65 of the Plaintiff's Complaint, the Errion Affidavit does not allege that Mr. Scodeggio "attended the meeting at the OTC" in Houston. Because Plaintiff does not and cannot provide a plausible allegation that Mr. Scodeggio participated in the May 1 meeting, Plaintiff's allegations regarding what "the cartel members" discussed and agreed to at the May 1, 2007 meeting does not pertain to Mr. Scodeggio. Therefore, the allegations against Mr. Scodeggio arising out of any alleged cartel meeting lack the "factual enhancement" necessary to survive a motion to dismiss under *Twombly*. *Twombly*, 127 S. Ct. at 1966.

  2.  Plaintiff's Allegations Regarding January 2007 Communications Mentioning or Involving Scodeggio are Insufficient To State a Section 1 Claim Under <u>*Twombly.*</u>

Plaintiff alleges that in January 2007, alleged cartel coordinator, Peter Whittle, told an individual from the Cooperating Company that "Scodeggio wanted to discuss bids on an upcoming Marine Hose job for which it was competing with the cooperating company." (Compl. ¶ 66.) Plaintiff goes on to allege that, in a tape-recorded phone conversation, "Scodeggio suggested that Parker and the cooperating company each subcontract part of the job

7

to each other." (*Id.*) Again these allegations fall far short of the standard set by *Twombly*, which provided that, "without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Twombly*, 127 S. Ct. at 1966. Mr. Whittle's account to a third party that Mr. Scodeggio "wanted to discuss bids on an upcoming Marine Hose job" is not an allegation of anticompetitive behavior. Similarly, Mr. Scodeggio's alleged suggestion to another company in the Marine Hose business that they subcontract part of a job to each other is not a violation of the Sherman Act since there is nothing *per se* anticompetitive about subcontracting jobs in the absence of an agreement not to bid competitively for the job in the first place. Additionally, Plaintiff never alleges that Mr. Scodeggio entered into any agreement, legitimate or illegitimate, with the Cooperating Company. This allegation thus fails to include "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 1965.

Plaintiff also alleges that based on "other e-mails" from Mr. Whittle, "Scodeggio was already a member of the conspiracy at the time of the [January 2007] call" with the Cooperating Company. (Compl. ¶ 66.) Plaintiff, however, fails to identify the time, place, content or recipients of these alleged emails. Such "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 127 S. Ct. at 1966. In a recent decision, the Second Circuit affirmed the district court's dismissal of an antitrust complaint that asserted vague and conclusory allegations similar to those alleged in the instant case. *See In re Elevator Antitrust Litig.*, No. 06-3128-cv, 2007 U.S. App. LEXIS 21086, at *6-8 (2d Cir. Sept. 4, 2007). Specifically, in *Elevator*, the court found that Section 1 conspiracy claims had to be dismissed under *Twombly* because allegations that defendants attended meetings together and engaged in multiple conversations regarding pricing constituted

only "general terms without any specification" and amounted to "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." *Id.* at 8 (citing *In re Elevator Antitrust Litig.*, No. 04-CV-1178, 2006 U.S. Dist. LEXIS 34517, at *9 (S.D.N.Y. May 30, 2006)). Therefore, Plaintiff's allegation of Mr. Scodeggio's alleged role in the conspiracy based on "other e-mails" also lacks the factual specificity required by *Twombly* to survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1971, n.10.

        3.      Plaintiff's Allegation that Mr. Scodeggio was Parker's Main Representative in the Cartel is Insufficient To State a Section 1 Claim under *Twombly*.

Plaintiff alleges that an April 2007 e-mail from Mr. Whittle "indicates that [Mr.] Scodeggio…was Parker's main representative in the cartel." (Compl. ¶ 67.) Plaintiff further alleges that Mr. Scodeggio became "Parker's main representative in the cartel" when Mr. Scodeggio "took over" a "former executive's responsibilities for Marine Hose pricing." (*Id.*) Plaintiff, however, never alleges any conduct that Mr. Scodeggio did as Parker's "main representative in the cartel." (*Id.*) This allegation, therefore, must fail under *Twombly* since "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted); *see also Elevator*, 2007 U.S. App. LEXIS 21086, at *6-8; *Elevator*, 2006 U.S. Dist. LEXIS 34517, at *8.

Finally, Plaintiff alleges that Mr. Scodeggio "spoke regularly" with the alleged conspiracy coordinator Whittle so that Whittle could "keep [Scodeggio] informed of the conspiracy's activities." (Compl. ¶ 66.) Such a broad allegation is insufficient to state a claim under *Twombly*, where the Court dismissed claims based on allegations that Section 1 violations occurred during a seven year time period, but which "mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 127 S. Ct. at 1971, n.10. The Supreme Court determined that these allegations failed to plausibly suggest an agreement, and therefore

9

dismissed the complaint. *Id.* at 1971. The Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Here, the allegations are equally deficient. The allegations in the Complaint do not set forth the specific dates or content of any of these alleged conversations between Mr. Whittle and Mr. Scodeggio. (Compl. ¶ 67.) Further, Plaintiff does not allege that Mr. Scodeggio agreed to anything during these conversations. Thus, Plaintiff's allegation that "Whittle spoke regularly with Scodeggio," fails as a matter of law under *Twombly* and the recent decision in the *Elevator* case in the Second Circuit.[3] Specifically, informing Mr. Scodeggio of conspiracy activities without alleging agreement or participation in the alleged conspiracy is insufficient as a matter of law.

Because all allegations related to Mr. Scodeggio lack plausible grounds, Mr. Scodeggio respectfully requests that this Court dismiss Plaintiff's Complaint under *Twombly* for failure to state a Section 1 claim against Mr. Scodeggio.

II. **THERE IS NO SUBJECT MATTER JURISDICTION OVER MR. SCODEGGIO BECAUSE PLAINTIFF DOES NOT ALLEGE THAT HIS CONDUCT IN ANY WAY DIRECTLY, SUBSTANTIALLY, AND FORESEEABLY AFFECTED U.S. COMMERCE**

Plaintiff's claims against Mr. Scodeggio are also insufficient because they do not properly allege that his conduct directly, substantially, and foreseeably affected U.S. commerce. Without more, Plaintiff's Complaint lacks sufficient allegations to vest this Court with subject matter jurisdiction and should be dismissed under the FTAIA.

The FTAIA precludes U.S. courts from applying domestic antitrust laws to commerce or trade with foreign nations. *See* 15 U.S.C. § 6a. An exception to this general rule applies where (1) the foreign conduct causes a "direct, substantial, and reasonably foreseeable" effect on

---

[3] The remainder of Plaintiff's allegations pre-date Mr. Scodeggio's employment at Parker and any wrongdoing alleged by the DOJ. Therefore, they do not – and cannot – apply to Mr. Scodeggio. (*See e.g.*, Compl. ¶¶ 42-47).

10

domestic commerce, and (2) that effect "gives rise to" a Sherman Act violation. *Id.* §§ 6a(1)-(2);[4] *see United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 949-53 (7th Cir. 2003). Thus, "[t]he FTAIA seeks to make clear to American exporters (and to firms doing business abroad) that the Sherman Act does not prevent them from entering into business arrangements…, however anticompetitive, as long as those arrangements adversely affect *only* foreign markets." *F. Hoffmann-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004) (emphasis added).

To adequately allege a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce a plaintiff must clearly claim that the defendant's conduct adversely impacts the United States. *See id.*; *see also Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("[T]he Sherman Act applies to foreign conduct that was meant to produce and *did in fact produce* some substantial effect in the United States") (emphasis added). Mere allegations that a foreign individual conspired are insufficient. *Cf. United States v. Nippon Paper Indus. Ltd.*, 109 F.3d 1, 4 (1st Cir. 1997) (civil antitrust actions predicated on foreign conduct require an intended and substantial effect in the U.S. to come within the Sherman Act's reach). Failure to adequately allege a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce deprives the court of subject matter jurisdiction over the alleged anticompetitive activity. *Empagran*, 542 U.S. at 162. In *Empagran*, the Court held that under the FTAIA, there is no subject matter

---

[4] The statute provides:

> Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless–
>
> > (1) such conduct has a direct, substantial, and reasonably foreseeable effect–
> > (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> > (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
> > (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

15 U.S.C. § 6a.

jurisdiction unless a foreign actor's conduct adversely affects U.S. commerce or trade directly. *Id.* at 161-62.[5]

In the instant case, the Complaint acknowledges that Mr. Scodeggio is an Italian citizen, working as the business unit manager for Parker in Ortona, Italy. (Compl. ¶ 26). While the Complaint alleges that the Defendants "engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Marine Hose in the United States and throughout the world," Plaintiff does not allege facts that set forth a claim that Mr. Scodeggio's alleged misconduct caused a "direct, substantial, and reasonably foreseeable" harm to domestic commerce. (*Id.* ¶ 36.) Rather, Plaintiff merely and erroneously claims that Mr. Scodeggio attended a May 2007 meeting with others "for the purpose of carrying out the conspiracy." (*Id.* ¶ 65.) Plaintiff's claim that Mr. Scodeggio suggested subcontracting with other parties is neither anticompetitive on its face, nor does it allege that Mr. Scodeggio's conduct directly or substantially affected U.S. markets. (*Id.* ¶ 66.) Moreover, Plaintiff's allegation that Mr. Whittle told an individual from the Cooperating Company that he "wanted to discuss bids" also fails to allege that Mr. Scodeggio's conduct affected U.S. commerce. (*Id.*) Finally, allegations that Mr. Scodeggio was Parker's main representative in the cartel not only fail to mention a possible effect on domestic commerce, but also do not allege that Mr. Scodeggio agreed to anything during these conversations. (*Id.* ¶ 67). Because Plaintiff merely claims that there is proper subject matter jurisdiction without offering support or alleging any facts necessary to sustain such a claim, Plaintiff's Complaint fails to meet the pleading standard

---

[5] The *Empagran* Court reasoned that the principles of prescriptive comity require this narrow application of the FTAIA because without requiring plaintiffs to demonstrate adverse domestic effects from foreign conduct, U.S. courts would have to examine how foreign law, compared with American law, treats the alleged conduct. *Empagran*, 542 U.S. at 168-69. Such an undertaking would result in "lengthier proceedings, appeals, and more proceedings -- to the point where procedural costs and delays could themselves threaten interference with a foreign nation's ability to maintain the integrity of its own antitrust enforcement system." *Id.*

12

set forth in *Twombly* requiring factual allegations to "be enough to raise a right to relief above the speculative level" and therefore fails to properly state a claim on which this Court could assert subject matter jurisdiction over Mr. Scodeggio's alleged conduct. *Twombly*, 127 S. Ct. at 1965; *see In re Elevator Antitrust Litigation*, 2007 U.S. App. LEXIS 21086, at *12 (evidence that defendants conspired in Europe is insufficient to allege a domestic conspiracy because, "[w]ithout…adequate allegation of facts linking transactions in Europe to transactions and effects here," plaintiffs' allegations are conclusory, and thus, fail as a matter of law under *Twombly*); *see also* Fed. R. Civ. P. 12(b)(6), 12(b)(1).  Since the Plaintiff has failed to allege facts sufficient to show that Mr. Scodeggio's conduct had a "direct, substantial, and reasonably foreseeable" effect on domestic commerce, the Court should grant Mr. Scodeggio's motion to dismiss.

## CONCLUSION

Because the Complaint fails to plead facts sufficient to satisfy the requirements of *Twombly* or the FTAIA, Mr. Scodeggio respectfully requests that the Complaint against him be dismissed.

Dated: September 28, 2007                              Respectfully submitted,

                                                       KING & SPALDING LLP

                                                       __/s/ James M. Griffin_____
                                                       James M. Griffin
                                                       Diana J. Pomeranz
                                                       1700 Pennsylvania Ave., NW
                                                       Suite 200
                                                       Washington, DC 20006

                                                       *Attorneys for Defendant Vanni Scodeggio*