Richard M. Steuer
**MAYER BROWN, LLP**
1675 Broadway
New York, NY  10019
Telephone: 212.506.2500
Fax: 212.262.1910

Jennifer M. Driscoll
Donald C. Klawiter
**MAYER BROWN, LLP**
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202.263.3000
Fax: 202.263.3300

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEEKS MARINE, INC., individually and on behalf of a class of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGESTONE CORPORATION, BRIDGESTONE INDUSTRIAL PRODUCTS AMERICA, INC., TRELLEBORG INDUSTRIE S.A., DUNLOP OIL & MARINE LTD., PARKER ITR S.L.R., MANULI RUBBER INDUSTRIES S.P.A., MANULI OIL & MARINE (U.S.A) INC., YOKOHAMA RUBBER CO., LTD., PW CONSULTING (OIL AND MARINE) LTD., PETER WHITTLE, DAVID BRAMMAR, BRYAN ALLISON, JAQUES COGNARD, CHRISTIAN CALECA, MISAO HIOKI, FRANCESCO SCAGLIA, and VANNI SCODEGGIO,<br><br>Defendants. | No. 07 CIV 6811 (AKH)<br><br>ECF case<br><br>**CHRISTIAN CALECA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S CAUSE OF ACTION** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ALLEGATIONS ....................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.      THE COMPLAINT'S ALLEGATIONS REGARDING MR. CALECA ARE
        INSUFFICIENT UNDER *TWOMBLY* AND *EMPAGRAN* ...................................... 3
        A.      The Supreme Court's Recent Decision In *Twombly* Governs The Pleading
                Standard In This Case. ................................................................................. 3
        B.      Plaintiff Must Sufficiently Allege That The Conspiracy Had A Substantial
                Impact On U.S. Commerce. .......................................................................... 5

II.     THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT MR.
        CALECA AGREED TO ENTER INTO A PRICE-FIXING CONSPIRACY
        AFFECTING THE UNITED STATES ................................................................... 7

CONCLUSION ................................................................................................................. 11

## INTRODUCTION

This Court should dismiss Plaintiff's cause of action against Defendant Christian Caleca. The Complaint fails to state a claim upon which relief can be granted, and Plaintiff's allegations do not establish subject matter jurisdiction. The Complaint is devoid of any allegation that Mr. Caleca participated in any contract, combination, or conspiracy to restrain trade of marine hose in the United States, and fails to connect Mr. Caleca to any sale of marine hose manufactured in, imported to, or exported from the United States. Consequently, the Complaint fails to "raise [Plaintiff's] right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), and does not satisfy the jurisdictional requirements of the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA") (requiring foreign commerce to have a "direct, substantial and reasonably foreseeable effect" on U.S. commerce).

## SUMMARY OF ALLEGATIONS

Plaintiff's Complaint names as Defendants seven foreign corporations, eight individuals who are not U.S. citizens or residents — including Mr. Caleca — and two American companies. (*See* Compl. ¶¶ 10-26.) The two American companies do not manufacture marine hose. Instead, Plaintiff alleges that they distribute marine hose for their foreign parent companies. (*See* Compl. ¶¶ 11, 16.) The Complaint alleges a "continuing contract, combination or conspiracy to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose sold to purchasers in the United States and throughout the world." (Compl. ¶ 1; *see also* Compl. ¶¶ 35, 79.) The Complaint further alleges that the "Defendants and their co-conspirators engaged in anticompetitive activities," including "[c]ommunicating with one another to discuss prices, customers, markets, market shares and price levels of Marine Hose sold in the United States and worldwide," and "[a]greeing to charge prices for Marine Hose at specific levels, to

allocate customers and markets and otherwise fixing, increasing, maintaining or stabilizing the prices of Marine Hose sold to purchasers in the United States and worldwide." (Compl. ¶ 36.)

Under the applicable pleading standards, a Sherman Act plaintiff must plead enough facts to show that broad allegations such as these are not merely speculative.  Yet, the Complaint presents scant facts in support of these general allegations, particularly with respect to Mr. Caleca — that he "is or was the President of the Industrial Hose Business Unit of Trelleborg in France" (Compl. ¶ 23); and that he "met" with others in the industry on two occasions (Compl. ¶¶ 60-62).  These observations fall short of involving Mr. Caleca in an alleged price-fixing conspiracy, let alone one affecting the United States.  (*See* Compl. ¶ 63.)  There is no allegation that the alleged meetings pertained to the U.S.

In lieu of further affirmative factual allegations, the Complaint simply points out that criminal complaints were filed against certain of the Defendants, including Mr. Caleca, in early May 2007, and cites to affidavits filed in support of the criminal complaints (but not attached to Plaintiff's Complaint).  (*See* Compl. ¶¶ 37–67.)  It is, however, black-letter law that "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss." *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984); *see also Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson County Mo.*, 747 F.2d 1195, 1198 (8th Cir. 1984) ("A pleading incorporating allegations from other documents must clarify which statements are to be incorporated."); *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference."); *cf. Harvey M. Jasper Ret. Trust v. IVAX Corp.*, 920 F. Supp. 1260, 1263 (S.D. Fla. 1995) ("[T]he fact that a plaintiff might quote from a corporate document in its pleading without appending such document to the pleading does not permit the defendants to introduce such document where a dismissal is sought

pursuant to Rule 12(b)(6).""). As a result, to the extent that Plaintiff intended, without so stating, to adopt allegations contained in filings from the criminal cases — which are hearsay in any event — this Court should consider only the parts of those filings that are expressly referenced in the Complaint.

Regardless, the only references to Mr. Caleca taken from the affidavit are that he was the subject of a criminal complaint, and the bare bones allegations discussed above. These references to criminal filings do not satisfy Plaintiff's pleading burden. Even assuming that Plaintiff meant to incorporate the cited criminal allegations, none of the alleged facts connects Mr. Caleca to any price-fixing activity affecting marine hose sales in the United States. As a result, the factual allegations in the Complaint are insufficient to support a Sherman Act claim against Mr. Caleca.

## ARGUMENT

**I.    THE COMPLAINT'S ALLEGATIONS REGARDING MR. CALECA ARE INSUFFICIENT UNDER *TWOMBLY* AND *EMPAGRAN*.**

### A.    The Supreme Court's Recent Decision In *Twombly* Governs The Pleading Standard In This Case.

In May of this year, the Supreme Court held that in order to survive a motion to dismiss, a Sherman Act claim must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 127 S. Ct. at 1959. In "retiring" the pleading standard articulated in *Conley v. Gibson,* 355 U.S. 41, 47 (1957), the *Twombly* Court held that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 1966, 1969 (holding that the "no set of facts" test "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his

Error! Unknown document property name.
DCDB01 20871989.1 09-Oct-07 11:57

"entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 1964-65 (internal citations omitted). The factual allegations of the challenged complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. This pleading requirement includes the burden to allege sufficient facts to establish subject matter jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938) ("It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.").

Applying *Twombly*, the Second Circuit in *In re Elevator Antitrust Litigation*, No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir. 2007), recently explained that a complaint that simply "enumerates 'basically every type of conspiratorial activity that one could imagine ... in entirely general terms without any specification of any particular activities by any particular defendant'" is insufficient to survive a Rule 12(b)(6) motion. Specifically, the *In re Elevator* plaintiffs asserted that, in furtherance of an alleged conspiracy, the defendants had

(a) participated in meetings in the United States and Europe to discuss pricing and market divisions;

(b) agreed to fix prices for elevators and services;

(c) rigged bids for sales and maintenance;

(d) exchanged price quotes;

(e) allocated markets for sales and maintenance;

(f) "collusively" required customers to enter long-term maintenance contracts; and

(g) collectively took actions to drive independent repair companies out of business.

Error! Unknown document property name.
DCDB01 20871989.1 09-Oct-07 11:57

*Id.* at *2 n.5. The court rejected these allegations as "'nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever.'" *Id.* at *2. The Complaint here provides little support for the threshold requirement — *i.e.*, that Mr. Caleca agreed to participate in a conspiracy, let alone one that was targeted at the United States. The Complaint's broad allegations of a contract, combination, or conspiracy, are nothing more than "labels and conclusions." Standing alone, these "formulaic recitation[s] of the elements" of a Sherman Act violation cannot withstand a motion to dismiss under *Twombly*. *See, e.g., In re Elevator Antitrust Litigation*, 2007 WL 2471805, at *1 (finding plaintiffs' allegations that defendants agreed "to suppress and eliminate competition in the sale and service of elevators by fixing the price of elevators [and] replacement parts and services, rigging bids for contracts for elevator sales, allocating markets and customers for elevators sales and maintenance services, and rigging bids for contracts for elevator maintenance and repair services" insufficient).

### B. Plaintiff Must Sufficiently Allege That The Conspiracy Had A Substantial Impact On U.S. Commerce.

*We should not impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences within the United States.* United States v. Aluminum Co. of Am. (Alcoa), 148 F.2d 416, 443 (2d Cir. 1945) (L. Hand, J.) (interpreting territorial reach of the Sherman Act).

Although written more than sixty years ago, Judge Hand's observation quoted above is apt here. Plaintiff has tried to piggy-back off criminal complaints alleging an essentially foreign conspiracy to bring civil claims against mostly foreign companies and foreign individuals. Plaintiff, however, does not only have to allege the basic elements of the Sherman Act, which prohibits "conspirac[ies] . . . in restraint of trade." *See* 15 U.S.C. § 1. Plaintiff must satisfy the jurisdictional requirements of the FTAIA.

As described by Justice Breyer, "[t]he Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) ... state[s] that the Sherman Act 'shall not apply to conduct involving trade or

**Error! Unknown document property name.**
DCDB01 20871989.1 09-Oct-07 11:57

commerce ... with foreign nations,' 15 U.S.C. § 6a, ... then creates exceptions ... [for] conduct

[that] significantly harms imports, domestic commerce, or American exporters." *F. Hoffmann-*

*La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004) (*"Empagran"*). Looking to the

FTAIA itself, foreign activity only violates the Sherman Act if, in addition to satisfying the

normal requirements, the activity has "a direct, substantial, and reasonably foreseeable effect" on

domestic or import commerce, and that the effect gives rise to the plaintiff's claims. *See* 15

U.S.C. § 6a. Thus, the Sherman Act "does not prevent . . . business arrangements . . . , however

anticompetitive, as long as those arrangements adversely affect only foreign markets."

*Empagran*, 542 U.S. at 161.

Under *Twombly* and *Empagran*, Plaintiff needs to articulate the nature of Mr. Caleca's

participation in an alleged illegal conspiracy substantially affecting U.S. commerce. *See*

*Twombly*, 127 S. Ct. at 1965 (requiring that plaintiffs "identify[] facts that are suggestive enough

to render a §1 conspiracy plausible"). And a "substantial effect" on U.S. commerce requires

something more than merely *some* effect. *See Hartford Fire Ins. Co. v. California*, 509 U.S.

764, 796 (2003) ("The Sherman Act applies to foreign conduct that was meant to produce and

did in fact produce some substantial effect in the United States.").

Even before *Empagran*, one court acquitted a defendant of criminal price fixing charges

in part because of the government's failure to prove a substantial effect on U.S. commerce. *See*

*U.S. v. Nippon Paper Indus. Co., Ltd.*, 62 F. Supp. 2d 173, 195–96 (D. Mass. 1999) (finding no

substantial effect on U.S. commerce because government "cannot claim to have carried its

burden of showing that the alleged conspiratorial conduct produced substantial effects in the

United States" given that market power of cartel participants and the overall market for thermal

fax paper waned throughout the conspiracy). In *Nippon Paper*, the court found that the

defendant had approximately $6 million in sales at the beginning of the conspiracy and that the

cartel had a 30% market share of the U.S. thermal fax paper market. *See id.* at 195.

Nonetheless, the court found that the conspiracy did not have a substantial effect on U.S.

commerce because of the collapse of the cartel's market power throughout the life of the

conspiracy. *See id.* (holding that "a substantial effect on United States commerce cannot simply

be assumed to continue because it once existed"). Acknowledging that a plaintiff alleging a

foreign conspiracy has an additional burden of alleging substantial harm to U.S. commerce, the

court, drawing on First Circuit authority, termed the plaintiff's proof requirement in a foreign

conspiracy case "per se plus." *See id.*

In light of the FTAIA, *Empagran*, *Hartford Fire*, and *Nippon Paper* — all viewed

through the lens of *Twombly* — Plaintiffs must sufficiently allege that Mr. Caleca agreed to

participate in an illegal price fixing conspiracy that substantially affected U.S. commerce. The

Complaint falls well short of this mark.

## II.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT MR. CALECA AGREED TO ENTER INTO A PRICE-FIXING CONSPIRACY SUBSTANTIALLY AFFECTING THE UNITED STATES.

No Defendant in this litigation manufactures marine hose in the U.S. Nor are any of the

individual defendants U.S. citizens or U.S. residents. The Plaintiff does not identify particular

sales that occurred here, or projects using marine hose in the United States. Given the foreign

flavor of the alleged conspiracy, Plaintiff's Complaint fails to establish a claim, and does not

provide a basis for this Court to exercise subject matter jurisdiction.

This failing is especially acute regarding Mr. Caleca. Plaintiff provides no explanation

whatsoever of Mr. Caleca's connection to — or even knowledge of — any alleged price-fixed

U.S. sales. Rather, the Complaint attempts to depict a global conspiracy among marine hose

manufacturers, all of whom are foreign. Trelleborg Industrie S.A., Mr. Caleca's employer, is a

Error! Unknown document property name.

DCDB01 20871989.1 09-Oct-07 11:57

French corporation based in Clermont-Ferrand, France. (Compl. ¶ 12.) Trelleborg's minimal

U.S operations are not named as defendants in this action and the complaint does not allege any

connection between Mr. Caleca and the U.S. operations. Rather, it states that Mr. Caleca "is or

was an executive of the Defendant Trelleborg in France." (Compl. ¶ 23.) The mere fact that Mr.

Caleca is employed by Trelleborg in France does not make Mr. Caleca subject to suit here.

Mr. Caleca is included within Paragraph 30's bald conclusion that all Defendants' actions

"substantially affected[] interstate commerce," but the remainder of the Complaint alleges no

*facts* to serve as a basis for this conclusion as to Mr. Caleca. As summarized above, the four

paragraphs in the complaint stating allegations regarding Mr. Caleca's alleged conduct (Compl.

¶¶ 59-62) only alleges that he attended two meetings over the seven-year conspiracy period

without specifying that U.S. pricing was the subject of the discussion

Simply put, the Complaint gives no reason to infer that Mr. Caleca is involved in sales of

marine hose to the United States, or a conspiracy involving U.S. marine hose sales. Thus, even

assuming *arguendo* that the Complaint properly alleges that Mr. Caleca was a member of a

foreign conspiracy, the Complaint fails to allege how Mr. Caleca allegedly participated in a

conspiracy that would be actionable under the Sherman Act, as limited by the FTAIA.

To be sure, the Complaint is replete with references amounting to the allegation that the

Defendants allegedly fixed the sale of marine hose to customers in the United States. However,

the picture that Plaintiff seeks to paint with this refrain cannot cover up the reality of the

essentially foreign nature of the marine hose market, and is belied by a more careful reading of

the Complaint.

For instance, none of the Defendants makes marine hose in the United States. Trelleborg

does not manufacture marine hose in the United States (*see* Compl. ¶ 12); although plaintiff

Error! Unknown document property name.
DCDB01 20871989.1 09-Oct-07 11:57

seeks to imply otherwise by listing off a number of alleged Trelleborg subsidiaries, most of whom have nothing to do with the marine hose business (*see id.* ¶ 12); Plaintiff uses a similar tactic for Dunlop (*see id.* ¶ 13); but then acknowledges that Parker, Manuli, and Yokohama manufacture their marine hose in Italy, Italy, and Japan respectively. *See id.* ¶¶ 14, 15, 17.

As for the individual Defendants, as noted *supra*, none are U.S. citizens or U.S. residents. All of them live and work abroad for foreign companies. The two American companies named as Defendants in this case allegedly "sell[], market[], ***and/or*** distribute[]" hose in the United States — they do not make it here. (Compl. ¶¶ 11, 16 (emphasis added).) Indeed they do not make marine hose at all. The non-U.S. parent Defendants manufacture the marine hose outside of the United States.

Given this, Plaintiff must more fully explain the extent to which the allegedly price-fixed sales impacted U.S. import commerce. *See In re Elevator*, 2007 WL 2471805, at *3 ("Allegations of anticompetitive wrongdoing in Europe — absent any evidence of linkage between such foreign conduct and conduct here — is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"). For example, were these sales "in the United States" made to U.S. customers? Was the marine hose shipped to the U.S., or was the contract merely negotiated here? More broadly, how big is the U.S. marine hose market? Would sales, even if fixed as alleged, constitute a "substantial" effect on the U.S. economy?

The paragraphs perhaps targeted at the FTAIA's jurisdictional requirements are Paragraphs 30 and 31. But these paragraphs are conclusory boilerplate at its worst. Paragraph 30 states: "The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce." Similarly, Paragraph 31 merely states that "Defendants sold and shipped substantial quantities of Marine

**Error! Unknown document property name.**
DCDB01 20871989.1 09-Oct-07 11:57

Hose in a continuous and uninterrupted flow of interstate commerce to customers located in the states other than the states or countries in which Defendants produced Marine Hose." These allegations are vague to the point of meaninglessness. Their factless, unsupported conclusions fail to satisfy the jurisdictional pleading requirements of the FTAIA and *Twombly*.

The only other paragraphs in the Complaint arguably touching on this issue are the paragraphs identifying the two American corporate Defendants. However, these paragraphs merely say that each of these companies "sells, markets and/or distributes . . . Marine Hose in the United States." (*See* Compl. ¶¶ 11, 16.) Without further elaboration, we are left to guess as to what Plaintiff meant with this boilerplate allegation. Do these companies import, export, advertise, negotiate contracts, collect payments, maintain distribution operations "and/or" perform any number of other activities that could be encompassed within this description? As it stands now with this vague description, Plaintiff has not sufficiently alleged the required connection between the alleged conspiracy and U.S. commerce.

## CONCLUSION

Plaintiff's Complaint fails to allege any facts to support the contention that Mr. Caleca

participated in a contract, combination, or conspiracy to restrain trade substantially affecting U.S.

commerce.  As a result, the Complaint fails to satisfy the requirement set forth under *Twombly*

and the FTAIA.  Accordingly, this Court should dismiss Mr. Caleca from the Complaint.


Dated: October 9, 2007


                                            Respectfully submitted,


                                            s/ _____

                                            Richard M. Steuer
                                            MAYER BROWN, LLP
                                            1675 Broadway
                                            New York, NY  10019
                                            Telephone: 212.506.2500
                                            Fax: 212.262.1910


                                            Jennifer M. Driscoll
                                            Donald C. Klawiter
                                            MAYER BROWN, LLP
                                            1909 K Street, N.W.
                                            Washington, DC 20006-1101
                                            Telephone: 202.263.3000
                                            Fax: 202.263.3300

                                            ***Attorneys for Defendant Christian Caleca***

Error! Unknown document property name.

DCDB01 20871989.1 09-Oct-07 11:57