### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

**WEEKS MARINE, INC.**, individually
and on behalf of a class of all those similarly
situated,

Plaintiff,

v.

**BRIDGESTONE CORPORATION, et al.,**

Defendants.

Civil Action No. 07-CIV-06811 (AKH)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS BY DEFENDANTS MISAO HIOKI AND VANNI SCODEGGIO**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT .................................................................................................................. 4

I.      THE SHERMAN ACT  § 1 ALLEGATIONS OF THE COMPLAINT READILY
        SATISFY RULE 8 ............................................................................................... 4

                A.      Twombly Did Not Change the Applicability of Rule 8 to the
                        Antitrust  Allegations of the Complaint ..................................................... 4

                B.      The Complaint States Facts Consistent with a "Plausible"
                        Violation of Sherman Act § 1 .................................................................... 6

II.     EMPAGRAN PROVIDES NO BASIS TO DISMISS THE COMPLAINT ................... 10

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*Behrend v. Comcast Corp.*,
    Nos. 03-6604, 07-218, 07-219, 2007 WL 2221415 (E.D. Pa. July 31, 2007) .........................13

*Bell Atl. Corp. v. Twombly*,
    ___ U.S. ___, 127 S. Ct. 1955 (2007) (*"Twombly"*)........................................................ *passim*

*Brass v. American Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir. 1993)...........................................................................................3

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).......................................................................................................4

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
    996 F.2d 537 (2d Cir. 1993)...........................................................................................6

*Conley v. Gibson*,
    355 U.S. 41 (1957).........................................................................................................5

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690, 698-99 (1962) ........................................................................................7

*Empagran v. F. Hoffman-La Roche, Ltd.*,
    417 F.3d 1267 (D.C. Cir. 2005) (*"Empagran II"*) ......................................................10

*Erickson v. Pardus*,
    ___ U.S. ___, 127 S. Ct. 2197 (2007)....................................................................2, 5, 7

*F. Hoffman-La Roche Ltd. v. Empagran, S.A.*,
    542 U.S. 155 (2004) (*"Empagran I"*) ..................................................................... *passim*

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993)............................................................................................11, 12, 13

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*,
    253 F. Supp. 2d 262 (D. Conn. 2003)..........................................................................7

*In re Commercial Explosives Litig.*,
    945 F. Supp. 1489 (D. Utah 1996)................................................................................7

*In re Elevator Antitrust Litig.*,
    No. 06-3128-CV, ___ F.3d ___, 2007 WL 2471805 (2d Cir. Sept. 4, 2007) .....................6, 10

*In re Fine Paper Antitrust Litig.*,
    685 F.2d 810 (3d Cir. 1982)..................................................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
    894 F. Supp. 703, 712 (S.D.N.Y. 1995)..............................................................................8

*In re Nine West Shoes Antitrust Litig.*,
    80 F. Supp. 2d 181 (S.D.N.Y. 2000)....................................................................................4

*In re Vitamins Antitrust Litig.*,
    No. Misc. 99-197 (TFH), 2000 WL 1475705, at *12 (D.D.C. May 9, 2000)........................8

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007)................................................................................................5

*Johnson & Johnson v. Guidant Corp.*,
    No. 06-cv-7685, 2007 WL 2456625 (S.D.N.Y. Aug. 29, 2007)............................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................................4

*MM Global Services, Inc. v. The Dow Chemical Co.*,
    329 F. Supp. 2d 337 (D. Conn. 2004)................................................................................12

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)............................................................................................................4

*Nagler v. Admiral Corp.*,
    248 F.2d 319, 326 (2d Cir. 1957).......................................................................................8

*U.S. v. Nippon Paper Indus. Co., Ltd.*,
    62 F. Supp. 2d 173 (D. Mass. 1999).....................................................................11, 12, 13

*U.S. v. Nippon Paper Indus. Co., Ltd.*,
    109 F.3d 1 (1st Cir. 1997)..................................................................................................12

*Xerox Corp. v. Media Sciences Int'l, Inc.*,
    No. 06-cv-4872, 2007 WL 2685063 (S.D.N.Y. Sept. 14, 2007) .........................................5

STATUTES

McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.* .............................................................11

§ 1 of the Sherman Act, 15 U.S.C. § 1.................................................................... *passim*

**RULES**

Fed. R. Civ. P. 8....................................................................................................................4, 5, 6

Fed. R. Civ. P. 9.........................................................................................................................4

Fed. R. Civ. P. 12(b)(6)..............................................................................................................5

## INTRODUCTION

Plaintiff Weeks Marine, Inc. ("Plaintiff") brought this action against corporate and individual Defendants,[1] including defendants Misao Hioki ("Hioki") and Vanni Scodeggio ("Scodeggio"), alleging that Defendants violated § 1 of the Sherman Act, 15 U.S.C. § 1, through a continuing contract, combination or conspiracy to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for marine hose, a flexible rubber hose used to, *inter alia*, transfer oil among or between ships, tankers, terminals, refineries, buoys, offshore mooring systems, onshore storage tanks or storage facilities. Complaint ¶¶ 1, 8.[2] As fully set forth below, Plaintiff's Complaint alleges both the existence of a bid rigging conspiracy that illegally raised prices for marine hose purchased in the United States and the direct participation of defendants Hioki and Scodeggio in that conspiracy. Plaintiff submits this memorandum in opposition to the separate motions of defendants Hioki and Scodeggio to dismiss the Complaint for failure to state a claim under the Sherman Act § 1, and for failure to establish subject matter jurisdiction.

Both motions evince a fundamental misunderstanding of two recent Supreme Court antitrust cases – *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007) ("*Twombly*") and *F. Hoffman-La Roche Ltd. v. Empagran, S.A.*, 542 U.S. 155 (2004) ("*Empagran I*"). Contrary to suggestions made in the motions to dismiss filed by Hioki and Scodeggio, *Twombly* does not mandate a heightened pleading standard for antitrust claims. *Twombly*, 127 S. Ct. at 1973 n.14. Like any other cause of action, antitrust claims "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1979. All that plaintiffs must

---

[1]    The Defendants in this action include: Bridgestone Corporation; Bridgestone Industrial Products America, Inc.; Trelleborg Industrie S.A.; Dunlop Oil & Marine Ltd.; Parker ITR, S.l.r.; Manuli Rubber Industries S.p.A.; Manuli Oil & Marine (U.S.A.) Inc.; Yokohama Rubber Co., Ltd.; PW Consulting (Oil and Marine) Ltd.; Peter Whittle; David Brammar; Bryan Allison; Jacques Cognard; Christian Caleca; Misao Hioki; Francesco Scaglia; and Vanni Scodeggio.

[2]    All references to "¶" are to the Complaint.

do is "identify[ ] facts that are suggestive enough to render a § 1 conspiracy *plausible.*" *Id.* at 1965 (emphasis added). The conspiracy alleged in the Complaint is unquestionably plausible. Therefore, neither Hioki nor Scodeggio can rely on *Twombly* as a basis for dismissal.

Likewise, both Defendants misconstrue *Empagran I,* which provides guidance for courts applying the Sherman Act to claims based on the foreign effects of commerce under the Foreign Trade Antitrust Improvement Act ("FTAIA"). *Empagran I,* 542 U.S. at 164. *Empagran I* is not relevant here because the Complaint seeks recovery for conduct that was both damaging to and directed at purchasers in the United States. In addition, while defendants Hioki and Scodeggio try to portray the Complaint's allegations of their involvement in the conspiracy as speculative, both ignore the fact that each has been indicted by the Department of Justice ("DOJ") for participating in the very same conspiracy alleged in the Complaint.

Since *Twombly* and *Empagran I* provide no basis for dismissing the Complaint against either Hioki or Scodeggio, their motions to dismiss should be denied.

## STATEMENT OF FACTS

The Complaint makes, *inter alia,* the following allegations, including specific allegations relating to Hioki's and Scodeggio's direct participation in the alleged conspiracy, which must be accepted as true when evaluating these motions to dismiss:[3]

- Beginning at least as early as 1999, Defendants – including Hioki and Scodeggio – participated in a contract, combination or conspiracy in restraint of trade to artificially affect the price consumers in the United States paid for marine hose. ¶ 35. In order to effectuate the conspiracy, Defendants communicated with one another to discuss prices for marine hose, agreed to charge specified prices for marine hose, and sold marine hose at agreed upon prices in the United States. ¶ 36.

---

[3]   "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (citing *Twombly,* 127 S. Ct. at 1965).

- The United States DOJ indicted eight executives – including Defendants Hioki and Scodeggio – for their participation in the marine hose cartel. ¶ 39. The conspirators met at several locations to effectuate the cartel and discuss bid-rigging, price fixing and market allocation for the sale of marine hose. ¶ 43.

- A manufacturer of marine hose who is cooperating with the DOJ has admitted to the existence of the conspiracy. ¶ 45. A confidential source who worked for this cooperating company, and was the key contact between the cooperating company and the cartel, has worked with the DOJ to help uncover the details of the conspiracy. ¶¶ 47-48. This cooperating individual, along with another cooperating individual, has verified a conspiracy to fix prices and allocate market share on "virtually all sales" of marine hose, including those in the United States. ¶ 50.

- Cartel meetings were held in various cities throughout the world, including London, England, Bangkok, Thailand, and Key Largo, Florida. ¶ 52.

- Peter Whittle, another Defendant in this action who has also been indicted by the DOJ, acted as the conspiracy coordinator. The Complaint describes Whittle's role as coordinator in detail. ¶¶ 19, 51-58. Cartel members established a system to compensate Whittle for his role as conspiracy coordinator. ¶ 55. As the coordinator, Whittle would determine which cartel member would win which bid for marine hose jobs, and then determine what bids the other cartel members would submit. ¶¶ 55-56. Whittle's coordination included in-person meetings with cartel members. ¶ 54.

- Defendant Hioki was an executive at Bridgestone involved in the sale of marine hose. ¶¶ 24, 63. Hioki met with one of the confidential sources, encouraging the participation of the cooperating company in the conspiracy. ¶ 63. Hioki supported the conspiracy, and spoke to Whittle about furthering its aims, even though Hioki and Whittle had no legitimate reason to be in contact. ¶ 63.[4]

- Defendant Scodeggio was, at least for part of the conspiracy, Defendant Parker ITR, SLR' s ("Parker") main representative in the cartel. ¶¶ 26, 67. As such, he had regular conversations with Whittle about the conspiracy. ¶¶ 26, 66-67. A tape recording of a conversation exists in which Whittle states that Scodeggio wanted to discuss bids on an upcoming marine hose job with a competitor in

---

[4]    In light of these facts alleged in the Complaint, Hioki's contention that the Complaint does nothing more than "simply point[] out that criminal complaints were filed against certain of the Defendants, including Mr. Hioki" (*see* Hioki Mot. at 3) is untenable. Furthermore, in addition to the factual allegations in a complaint, a Court can consider "documents either in a plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit" when assessing a motion to dismiss. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). This includes criminal indictments and accompanying affidavits.

January 2007. ¶ 66. A subsequent phone call, also recorded, details Scodeggio's price fixing on behalf of Parker. ¶ 66.

## ARGUMENT

### I.    The Sherman Act § 1 Allegations Of The Complaint Readily Satisfy Rule 8

#### A.    *Twombly* Did Not Change the Applicability of Rule 8 to the Antitrust Allegations of the Complaint

Sherman Act § 1 allegations are to be evaluated under Rule 8 of the Federal Rules of Civil Procedure on a motion to dismiss. *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 185, 191 (S.D.N.Y. 2000). Defendants Hioki and Scodeggio both mistakenly argue that *Twombly* requires this Court to dismiss the Complaint as insufficiently pleading a factual basis for Plaintiff's Sherman Act § 1 claims with respect to each of them. *See* Hioki Mot. at 1-2, 4-6; Scodeggio Mot. at 4-5. *Twombly*, however, imposes no "stricter pleading requirement" for Sherman Act § 1 cases.[5] Rather, *Twombly* unambiguously affirmed that Rule 8(a) applies to antitrust claims. *Twombly*, 127 S. Ct. at 1973 n.14 ("[i]n reaching this conclusion, we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9"), and at 1974 ("we do not require heightened fact pleading of specifics").

With *Twombly*, the Supreme Court did only two things. *Twombly* aligned the requirements for pleading a claim under Sherman Act § 1 with the doctrinal development in *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993), which states that mere conscious parallelism is not a violation of § 1. *Twombly*, 127 S. Ct. at 1964.[6]

---

[5]    Scodeggio Mot. at 5.

[6]    In making this point, the Supreme Court adapted the standard of *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) – that a plaintiff's evidence of a § 1 conspiracy at trial or on summary judgment must tend to exclude the "possibility" of independent action – to require that a plaintiff on a motion to dismiss "identify[ ] facts that are suggestive enough to render a § 1 conspiracy *plausible*," *Twombly*, 127 S. Ct. at 1965 (emphasis added). *Id.* at 1965-66.

*Twombly* also retired the language of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which stated that a complaint could not be dismissed "unless it appears beyond doubt that no set of facts in support of [the plaintiff's] claim . . . would entitle him to relief" in favor of the "standard [that,] once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1968, 1969.

Nothing in *Twombly* alters the applicability of Rule 8(a) to the Complaint here. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. at 47). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964; *see also Xerox Corp. v. Media Sciences Int'l, Inc.*, No. 06-cv-4872, 2007 WL 2685063, at *2 (S.D.N.Y. Sept. 14, 2007) (citing *Twombly* for same); *Johnson & Johnson v. Guidant Corp.*, No. 06-cv-7685, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007) ("It remains true [subsequent to *Twombly*], however, that 'specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests'") (quoting *Erickson*, 127 S. Ct. at 2200). "Factual allegations must [only] be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The factual allegations must only "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Id.* at 1974; *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*" (emphasis in original)).

**B.    The Complaint States Facts Consistent with a "Plausible" Violation of Sherman Act § 1**

1.    Specific Allegations Against Each Defendant Satisfy the Pleading Requirements

The Complaint readily meets the requirements of Rule 8(a)(2) by presenting facts consistent with the allegations of a Sherman Act § 1 violation. *Twombly*, 127 S. Ct. at 1969. To state a claim under Sherman Act § 1, plaintiffs must allege (1) "a combination or some form of concerted action between at least two legally distinct economic entities," which (2) "constituted an unreasonable restraint of trade either *per se* or under the rule of reason." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993). *Per se* violations include horizontal price fixing, bid rigging and market allocation. *See Id.*

Contrary to the contention of moving defendants Hioki and Scodeggio, the allegations of the Complaint are "more than 'labels and conclusions' [and] . . . 'formulaic recitation[s] of the elements' of a Sherman Act violation," and go beyond allegations of an inference of an illegal agreement. *See* Hioki Mot. at 5-6 (quoting *In re Elevator Antitrust Litig.*, No. 06-3128-CV, __ F.3d ___, 2007 WL 2471805, at *1 (2d Cir. Sept. 4, 2007)); Scodeggio Mot. at 4. Instead, Plaintiff has pled specific factual allegations that more than plausibly indicate the existence of an illegal bid-rigging conspiracy involving defendants Hioki and Scodeggio.

While defendant Hioki insists that the only allegations specific to him in the Complaint indicate that he is an executive involved in the marine hose business for defendant Bridgestone, and that he met with two alleged co-conspirators in 2006 and 2007,[7] Hioki all but ignores the fact that he was indicted for participating in the same conspiracy for which the Complaint seeks civil recovery. Scodeggio similarly argues that the Complaint only alleges three specific acts against him – participation in a cartel meeting, conversations between Scodeggio and the cartel

---

[7]    Hioki Mot. at 2 (*citing* ¶¶ 24, 63).

coordinator, and that Scoddeggio (as Parker's main representative in the cartel) spoke to the

coordinator regularly, Scoddeggio Mot. at 2-3, 6 (citing ¶¶ 59, 65-67) – without noting that

Scodeggio has been indicted for his participation in the conspiracy.[8]

In so arguing, both Hioki and Scoddegio essentially claim that allegations of their direct

involvement in the conspiracy – such as meeting with cartel members and helping to coordinate

rigged bidding for marine hose jobs between cartel members – somehow fall short of the

*Twombly* plausibility standard.  Quite the contrary, such facts are clearly enough to render

allegations of a Section One conspiracy involving Hioki and Scodeggio plausible.[9]  *Twombly*,

127 S. Ct. at 1965 (Complaint allegations must be "suggestive enough to render a § 1 conspiracy

plausible").

---

[8]     To the extent that Defendant Scodeggio argues that the Complaint "erroneously claims
that Mr. Scodeggio attended a May 2007 meeting" with other cartel members, Scodeggio Mot. at
2, 6-7, 12, his argument is irrelevant at this stage of the proceedings. *See Erickson*, 127 S. Ct. at
2200 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the
factual allegations contained in the complaint.")

[9]     Even without these specific facts describing some of the ways in which Hioki and
Scodeggio participated in the conspiracy, the Complaint still meets *Twombly*'s plausibility
standard.  "Plaintiffs in this circuit have not been required to specify individual acts of each
defendant in an antitrust conspiracy allegation." *Ice Cream Liquidation, Inc. v. Land O'Lakes,
Inc.*, 253 F. Supp. 2d 262, 278 (D. Conn. 2003).  Other courts have also concluded that it is
unnecessary to detail antitrust conspiracy allegations defendant by defendant. *See In re Fine
Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982) (district court should not
"compartmentaliz[e]" a conspiracy claim through "a seriatim examination of the claims against
each of five conspiracy defendants as if they were separate lawsuits") (citing *Continental Ore
Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962)); *see also In re Commercial
Explosives Litig.*, 945 F. Supp. 1489, 1492 (D. Utah 1996) (complaint alleging acts of conspiracy
by defendants generally "fairly informs [one defendant] that it is accused of engaging in a
conspiracy to fix the prices of commercial explosives and that it did so by such activities as
meeting with competitors to discuss and agree on prices, discussing the setting of prices over the
telephone, exchanging pricing documents, agreeing to raise prices, imposing fabricated
surcharges, and retaliating against [another manufacturer] for refusing to go along").

2.    Complaint Provides Fair Notice of Claims Against Hioki and Scoddeggio

The facts in the Complaint are sufficient to provide fair notice to defendants of the claims

against them; "[p]leading of the evidence is not required." *In re Vitamins Antitrust Litig.*, No.

Misc. 99-197 (TFH), 2000 WL 1475705, at *12 (D.D.C. May 9, 2000). Nor need an overt act be

pled against each defendant:

> [D]efendants' contention that plaintiffs must specifically allege acts committed by
> each defendant to show its involvement in the conspiracy is baseless. "An overt
> act need not be pleaded against each defendant, because a single overt act by just
> one of the conspirators is enough to sustain a conspiracy claim even on the
> merits."

*Id.* at *11 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703, 712

(S.D.N.Y. 1995)). In *Vitamins*, defendants argued, as do both moving defendants here, that their

motion to dismiss should be granted because plaintiffs' allegations did not sufficiently link each

individual defendant to the overall conspiracy. *Id.* at *9. The *Vitamins* court, citing a Second

Circuit case, concluded, "These allegations clearly provide defendants with fair notice of

plaintiffs' claims. . . . Pleading of the evidence is not required and is on the whole undesirable at

this stage in the litigation." *Id.* at *11-12 (citing *Nagler v. Admiral Corp.*, 248 F.2d 319, 326 (2d

Cir. 1957) ("It is a matter for the discovery process, not for allegations of detail in the complaint.

The complaint should not be burdened with possibly hundreds of specific instances; and if it

were, it would be comparatively meaningless at trial where the parties could adduce further

pertinent evidence if discovered. They can hardly know all their evidence, down to the last detail,

long in advance of trial.").

The same conclusion and reasoning applies to the allegations of the Complaint here.

Defendants Hioki and Scodeggio are provided with fair notice of Plaintiff's claims – *i.e.*, that

they each participated in an admitted conspiracy that affected "virtually all sales" of marine hose,

including sales in the United States. ¶¶ 45, 47-48, 50. Nothing further is required. The Complaint need not catalogue every specific piece of evidence pointing to their involvement in the conspiracy, as Hioki and Scodeggio complain.

Moreover, in their attempt to obfuscate the Complaint's allegations, Hioki and Scodeggio both ignore the portion of the Complaint that clearly states:

> Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegations mean that the corporation engaged in the act, deed or transaction *by or through its officers, directors, agents, employees or representatives* . . .

¶ 27 (emphasis added). The allegations in the Complaint against Hioki and Scodeggio are therefore not as limited as they both present them to be. Hioki's claim that the Complaint is "telling for what it does not say" (Hioki Mot. at 2) fails to take into account Hioki's indictment and myriad other facts that allege illicit conduct in violation of the Sherman Act. The Complaint specifies factual allegations in which "Defendants," "cartel members," and "conspirators" participated, including, *inter alia*:

- Reaching illegal agreements to rig bids, fix prices and allocate market share on "virtually all sales" of marine hose (¶ 50);

- The existence of detailed minutes of cartel meetings (¶ 51);

- In-person meetings organized by Whittle to discuss the conspiracy (¶ 54);

- Conspirators receiving regular reports discussing the allocation of marine hose jobs (¶ 57);

- Discussions among cartel members of rules for implementing their bid-rigging conspiracy, as well as means of improving communication among cartelists (¶ 60); and

- Meeting at specified times and places to further the conspiracy (¶¶ 52-53).

These facts do not "support the reasonable inference that Mr. Hioki did not participate" in the conspiracy, as Hioki contends. Hioki Mot. at 4. Nor do they support Mr. Scodeggio's

contention that the Complaint "is devoid of any allegations that Mr. Scodeggio participated" in the cartel. Scodeggio Mot. at 1. Instead, the facts alleged in the Complaint are more than sufficient to meet *Twombly*'s plausibility standard.[10]  Therefore, the Sherman Act § 1 claims against Defendants Hioki and Scodeggio must be sustained by this Court.

**II.      *Empagran* Provides No Basis to Dismiss the Complaint**

Both Hioko and Scodeggio also move to dismiss the Complaint under the Foreign Trade Antitrust Improvements Act ("FTAIA"), relying on the Supreme Court's decision in *Empagran I*. They argue that Plaintiff fails to plead that their actions have a direct and substantial effect on commerce in the United States. Hioki Mot. at 6-8; Scodeggio Mot. at 10-13. In so doing, they both misinterpret the Court's decision to mean that claims under the Sherman Act seeking recovery for harms suffered in the United States by a global cartel are precluded under the FTAIA. *Empagran I* held no such thing.

The FTAIA is only applicable to claims based on the effects on foreign commerce, not allegations of a conspiracy to fix prices in the United States. *Empagran v. F. Hoffman-La Roche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) ("*Empagran II*") (finding under *Empagran I* that the FTAIA "makes the Sherman Act inapplicable to conduct involving non-import foreign trade or commerce"). *Empagran I* holds that foreign plaintiffs cannot bring suit in the United States under the FTAIA where the foreign harm such plaintiffs suffer is independent from the domestic

---

[10]      The Second Circuit case on which both Defendants rely – *In re Elevator Antitrust Litig.*, No. 06-3128-CV, __ F.3d ___, 2007 WL 2471805, at *1 (2d Cir. Sept. 4, 2007) – is inapposite. In stark contrast to the Complaint in this action, the *Elevator* complaint failed to specify where conspirators met, lacked the foundation of two federal indictments, and relied on the parallel conduct of the defendants to allege a conspiracy. As a conscious parallelism case, *Elevator* falls squarely under the auspices of *Twombly*. The present action is not a conscious parallelism case. As the Complaint alleges, the conspirators met in specific locations to further the conspiracy, including in the United States in 2001 and 2007. ¶¶ 61-63. The Complaint also alleges that a member of the conspiracy has "*admitted*" its existence. ¶ 45. This is a far cry from the bare-bones allegations that led to the dismissal of the *Elevator* complaint.

anticompetitive effect of a defendant's foreign conduct. *Empagran I*, 542 U.S. at 164. A country with a greater nexus between the foreign plaintiff and the foreign harm is a more appropriate forum to adjudicate such claims. *Id.* at 166-67. In *Empagran I*, the plaintiff's claim was based on injury suffered in foreign markets that was independent of any adverse domestic effect of the anticompetitive conduct. As such, *Empagran I*'s holding explicitly depended on the fact that "foreign harm alone" gave rise to the plaintiff's claim." *Id.* at 166. The Complaint here alleges a conspiracy in violation of the Sherman Act to rig bids for purchasers of marine hose in the United States. It is for these domestic purchases, not foreign purchases, for which Plaintiff seeks redress. Therefore, any reliance by defendants Hioko and Scodeggio on *Empagran I* is misplaced.

The two cases cited by Hioko and Scodeggio to justify their reliance on *Empagran I* demonstrate just how immaterial *Empagran I*'s interpretation of the FTAIA is to the allegations in this Complaint. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993), assessed the applicability of the Sherman Act to insurance conspiracies involving foreign defendants in light of the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, which offers antitrust immunity for the insurance industry. Both Hioki and Scodeggio quote *Hartford Fire* as stating that "the Sherman Act applies to foreign conduct that was meant to produce and did in fact product some substantial effect in the United States." Hioki Mot. at 7, Scodeggio Mot. at 11. Both motions fail to mention the sentence prior to that quotation, in which the Court made clear that, "At the outset, we note that the District Court undoubtedly had jurisdiction of these Sherman Act claims, as [the foreign defendants] apparently concede." *Hartford Fire*, 509 U.S. at 795.

In *U.S. v. Nippon Paper Indus. Co., Ltd.*, 62 F. Supp. 2d 173 (D. Mass. 1999), a criminal case both Defendants cite to support their argument, the court found on a judgment on acquittal

- 11 -

*after a six-week trial* that the evidence put forth failed to show that there was a conspiracy, that the defendant was a part of that conspiracy, or that the conspiracy had intended and substantial effects on the United States. *Id.* at 195. *Nippon Paper* is not relevant to the pleading standard on a motion to dismiss. Furthermore, when assessing *Nippon Paper* at an earlier procedural stage, the First Circuit held that "*Hartford Fire* definitively establishes that Section One of the Sherman Act applies to wholly foreign conduct which has an intended and substantial effect in the United States." *U.S. v. Nippon Paper Industries Co., Ltd.*, 109 F.3d 1, 9 (1st Cir. 1997).

As both Hioki and Scodeggio acknowledge, a complaint is appropriately brought in the United States if the plaintiff alleges that the illicit conduct at issue adversely impacts the United States. Hioki Mot. at 6-7; Scodeggio Mot. at 11. Here, this is precisely what Plaintiff's Complaint does. ¶ 1 (alleging that purchasers of marine hose in the United States "suffered antitrust injury to their business or property" because of "Defendants' unlawful conduct"); *see MM Global Services, Inc. v. The Dow Chemical Co.*, 329 F. Supp. 2d 337, 342 (D. Conn. 2004) (holding that a complaint properly alleged that defendants' conduct had an effect on competition in and from the United States, and that plaintiffs were injured as a result thereof, when the complaint stated, "as the result of such effect on competition, [the] [p]laintiffs were injured . . ."). The Complaint is filed on behalf of a putative class of United States purchasers of marine hose. ¶¶ 1, 72, 75(d). Cartel members sold marine hose in the United States. ¶¶ 12-17, 34. The cartel's illicit activity affected price on "virtually all sales" of marine hose, including marine hose sold in the United States. ¶ 50. Moreover, much of the conspiratorial activity alleged in the Complaint took place in the United States, including meetings to facilitate the conspiracy and conversations and meetings including Hioki and Scodeggio that were undertaken to further the conspiracy. ¶¶ 52, 59-63. The eight individual defendants in this action were indicted in the

United States, including defendants Hioki and Scodeggio, after search warrants were executed for the hotel rooms of the Defendants' representatives in the United States. *Id.* at ¶¶ 37-39, 51.[11] The Complaint therefore alleges a substantial effect on commerce in the United States. Nothing in *Empagran, Hartford Fire* or *Nippon Paper* suggests that a different conclusion is appropriate.

## CONCLUSION

Both the Hioki and Scodeggio motions to dismiss should be denied because Plaintiff's Complaint for violations under Sherman Act § 1 sufficiently pleads the existence of a conspiracy with direct and substantial effects on United States commerce in which both defendants Hioki and Scodeggio were directly involved.

---

[11]    Without citation to a single case other than *Elevators*, distinguished in note 10 *supra*, Hioki asserts that the Complaint fails to connect the conspiracy in the United States to Hioki. Hioki Mot. at 8-11. In so doing, Hioki propounds a number of questions related to specific acts alleged that will no doubt be the subject of discovery as the litigation progresses. Neither *Twombly* nor any other case requires that such questions be answered at the pleading stage. *Twombly,* 127 S. Ct. at 1964 (making clear that a complaint need not contain detailed factual allegations to survive a motion to dismiss); *see also Behrend v. Comcast Corp.,* Nos. 03-6604, 07-218, 07-219, 2007 WL 2221415, *2 (E.D. Pa. July 31, 2007) ("Stated succinctly, the holding of *Twombly* is that, while an antitrust complaint need not plead detailed factual allegations, the factual allegations it does include 'must be enough to raise a right to relief above the speculative level.'") (citing *Twombly,* 127 S. Ct. at 1964-65).

October 12, 2007                         Respectfully submitted,


                                          /s/   Robert G. Eisler
                                         Robert G. Eisler (RE-1398)
                                         Seth R. Gassman (SG-8116)
                                         COHEN, MILSTEIN, HAUSFELD & TOLL,
                                         PLLC
                                         150 East 52nd Street
                                         Thirtieth Floor
                                         New York, NY 10022
                                         Phone: 212-838-7797
                                         Fax: 212-838-7745


                                         Michael D. Hausfeld
                                         COHEN, MILSTEIN, HAUSFELD & TOLL,
                                         PLLC
                                         1100 New York Avenue, N.W.
                                         Suite 500, West Tower
                                         Washington, DC 20005
                                         Phone: 202-408-4600
                                         Fax: 202-408-4699


                                         Steven O. Sidener
                                         Joseph M. Barton
                                         GOLD BENNETT CERA & SIDENER LLP
                                         595 Market Street, Suite 2300
                                         San Francisco, CA 94105
                                         Telephone: (415) 777-2230
                                         Fax: (415) 777-5189


                                         *Attorneys for Plaintiff Weeks Marine, Inc.*