James H. Mutchnik. P.C. (admitted *pro hac vice*)
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone: (312) 861-2000
Facsimile:  (312) 861-2200

Christopher T. Casamassima (admitted *pro hac vice*)
David I. Horowitz  (DH 0921)
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California  90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEEKS MARINE, INC., individually and on behalf of a class of all those similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BRIDESTONE CORPORATION, BRIDGESTONE INDUSTRIAL PRODUCTS AMERICA, INC., TRELLEBORG INDUSTRIE S.A., DUNLOP OIL & MARINE LTD., PARKER ITR S.L.R., MANULI RUBBER INDUSTRIES S.P.A., MANULI OIL & MARINE (USA) INC., YOKOHAMA RUBBER CO., LTD., PW CONSULTING (OIL AND MARINE) LTD., PETER WHITTLE, DAVID BRAMMAR, BRYAN ALLISON, JAQUES COGNARD, CHRISTIAN CALECA, MISAO HIOKI, FRANCESCO SCAGLIA, and VANNI SCODEGGIO,<br><br>   Defendants. | No. 07 CIV 6811 (AKH)<br><br>ECF case<br><br>**MISAO HIOKI'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S CAUSE OF ACTION** |

## **TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**ARGUMENT**.........................................................................................................................1

**I.     PLAINTIFF FAILS TO ALLEGE ITS INVOLVEMENT IN UNITED
        STATES COMMERCE**..........................................................................................1

**II.    PLAINTIFF FAILS TO ALLEGE MR. HIOKI'S INVOLVEMENT IN AN
        ILLEGAL CONSPIRACY.**....................................................................................3

**CONCLUSION** ....................................................................................................................5

## INTRODUCTION

In its Opposition to Mr. Hioki's motion to dismiss, Plaintiff summarizes and repeats the conclusory allegations set forth in its Complaint. These allegations describe the general operation of an alleged conspiracy involving foreign companies, foreign individuals, and a product that is not made in the United States, while providing scant information about what, if any, marine-hose transactions Plaintiff performs in United States commerce. Consequently, Plaintiff fails to explain why the alleged conspiracy is actionable under the Sherman Act, as limited by the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA") (requiring foreign commerce to have a "direct, substantial, and reasonably foreseeable effect" on United States commerce).

Beyond this general failing, Plaintiff does not sufficiently describe Mr. Hioki's involvement in any illegal agreement. Plaintiff seeks to cure this pleading failure by arguing that its broad allegations about what "Defendants" did to perpetuate the alleged conspiracy necessarily sweeps in Mr. Hioki. This type of roughshod, generalized pleading is unacceptable, especially because the Complaint itself establishes that Mr. Hioki did not participate in many of the alleged acts attributed to "Defendants." Plaintiff must provide sufficient facts from which the Court can infer Mr. Hioki's involvement in the alleged conspiracy, and it does not.

## ARGUMENT

**I.   PLAINTIFF FAILS TO ALLEGE ITS INVOLVEMENT IN UNITED STATES COMMERCE.**

In its Opposition, to explain why the allegations in its Complaint satisfy the requirements of the FTAIA, Plaintiff argues that "[t]he FTAIA is only applicable to claims based on the effects on foreign commerce, not allegations of a conspiracy to fix prices in the United States." Plaintiff's Memorandum of Law In Opposition To The Motions To Dismiss By Defendants

Misao Hioki and Vanni Scodeggio ("Opp.") at 10.  Plaintiff then insists that its Complaint satisfies the jurisdictional requirements of the FTAIA because the putative class is comprised of alleged United States purchasers of marine hose; cartel members sold marine hose in the United States; the cartel's activity affected "virtually all sales" of marine hose; the conspiratorial activity, including cartel meetings, took place in the United States; and Mr. Hioki was indicted in the United States.[1]  *See* Opp. at 12–13.  Even adding up all these allegations, however, the Complaint still fails to pass scrutiny under the FTAIA.  That is because Plaintiff has not described how it participates in the ***United States*** marine hose market, if at all.

In fact, Plaintiff tellingly refuses to discuss its use of marine hose and any facts surrounding its alleged purchases of marine hoses.  In a back-of-the-hand footnote, Plaintiff says it will answer Mr. Hioki's questions regarding its marine hose purchases during "discovery, as the litigation progresses."  *See* Opp. n.11 at 13.  But given the foreign nature of the alleged conspiracy — including that ***none*** of the Defendants manufacture marine hose in the United States — Plaintiff should not be given such an easy pass.  *See* Misao Hioki's Memorandum of Law In Support Of His Motion To Dismiss Plaintiff's Cause of Action ("Hioki Mem.") at 8-11.

The Complaint does not contain a single allegation that Weeks Marine, the only Plaintiff in the case, actually imported or otherwise took possession of marine hose in the United States.  This is critical, given that all marine hose manufactured by Defendants is made abroad.  If Plaintiff, for example, purchased marine hose for a project outside the United States and the marine hose never entered the United States, Plaintiff's alleged marine hose purchases would ***not*** qualify as "import" commerce under the FTAIA.  As a result, Plaintiff's marine hose purchases would fall squarely outside the jurisdictional limits set forth by the FTAIA.  *See* Hioki Mem. at

---

[1] Despite statements in the Opposition to the contrary, Mr. Hioki has not been indicted.  As originally alleged by Plaintiff, he has been charged by complaint.  *See, e.g.*, Compl. ¶ 39.

6-8; *see also* 15 U.S.C. § 6a (requiring "trade or commerce (other than import trade or import commerce) with foreign nations" to have a "direct, substantial, and reasonably foreseeable effect" on United States commerce).

Hioki should not have to endure the burden and expense of discovery if Plaintiff cannot plead the fundamental facts that form the basis of jurisdiction in this Court. The Court should order Plaintiff to amend the Complaint to plead facts establishing that the marine hose it allegedly purchased was actually imported to the United States. If it cannot do so, Plaintiff must plead additional facts to satisfy the FTAIA requirement of a "direct, substantial, and reasonably foreseeable effect" on United States commerce. *See* 15 U.S.C. § 6a.

## II. PLAINTIFF FAILS TO ALLEGE MR. HIOKI'S INVOLVEMENT IN AN ILLEGAL CONSPIRACY.

In its Opposition, Plaintiff places heavy emphasis on the Complaint's allegations that "Defendants" met in various locations to discuss the alleged price-fixing conspiracy. *See* Opp. at 6-7, 9. But merely alleging that a group of Defendants engaged in this conduct is insufficient to state a claim against Mr. Hioki. *See Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1970-71 & n.10 (2007) (Allegation that "[the ILECs] have entered into a contract, combination or conspiracy to prevent competitive entry into their… markets and have agreed not to compete with one another" is insufficient because it "furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place."); *see also In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303, 312 (D.N.J. 2004) ("Simply using the 'global term 'defendants' to apply to numerous parties without any specific allegations' that would tie each particular defendant to the conspiracy is not sufficient.") (citations omitted); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated

3

in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [the particular defendant]."). Plaintiff must explain Mr. Hioki's involvement in the alleged conspiracy, without resorting to vague generalities.

Yet, Plaintiff never alleges that Mr. Hioki attended any of the cartel meetings. In fact, the Complaint itself makes clear that Mr. Hioki ***did not*** attend ***any*** of the cartel meetings Plaintiff specifically identifies in its Complaint: the alleged December 1999 meeting in London, *see* Compl. ¶ 52(a) (naming the meeting attendants as Whittle and Cognard); the alleged December 2000 meeting in Bangkok, *see* Compl. ¶ 52(b) (naming the meeting attendants Whittle, Brammar, Cognard, and an unidentified Florida resident); the alleged June 2001 meeting in Key Largo, *see* Compl. ¶ 52(c) (same); the alleged July 2002 meeting in London, *see* Compl. ¶ 52(d) (naming the meeting attendants as Whittle, Allison, Brammar, Cognard, a confidential source, and an unidentified Florida resident); or the alleged May 1, 2007 meeting in Houston, Texas. *See* Compl. ¶ 63 (alleging that Mr. Hioki had a "private meeting" with one alleged co-conspirator prior to the alleged cartel meeting).

In each of these instances, the Complaint is clear that Mr. Hioki did not participate in the alleged cartel meetings. Consequently, Plaintiff's own allegations establish that the term "Defendants" in the Complaint does ***not*** always include Mr. Hioki. *Cf*. Opp. at 9.

What the Complaint does say is that, according to an unnamed source, Mr. Hioki "met with one of the confidential sources and another executive of the cooperating company [widely known to be the Japanese company, Yokohama Rubber] in or about October 2006." *See* Compl. ¶ 63. At this alleged meeting, Mr. Hioki is alleged to have "encouraged the cooperating company's participation." *Id.* The Complaint also describes an alleged "private meeting" in Houston between Mr. Hioki and an alleged co-conspirator where Mr. Hioki purportedly

4

expressed that he was "fully supportive" of the alleged conspiracy.  *See id.*  Plaintiff does not describe any agreement by Mr. Hioki to participate in the cartel.

Without pleading that Mr. Hioki entered into an ***agreement*** to fix prices — as opposed to being merely "supportive" of an alleged conspiracy — Plaintiff fails to allege Mr. Hioki's involvement in the alleged cartel.  *See Twombly*, 127 S. Ct. at 1964 (holding that "'[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express'") (internal citations omitted).  Consequently, Mr. Hioki should be dismissed from the Complaint.

## CONCLUSION

Plaintiff's Complaint fails to allege facts that support an inference that Mr. Hioki participated in a contract, combination, or conspiracy to restrain trade substantially affecting United States commerce.  As a result, the Complaint fails to satisfy the requirement set forth under *Twombly* and the FTAIA.  Accordingly, this Court should dismiss Mr. Hioki from the Complaint.

5

Dated: October 22, 2007

                                      Respectfully submitted,

                                        s/ James H. Mutchnik P.C.
James H. Mutchnik, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:   (312) 861-2200

Christopher T. Casamassima (admitted *pro hac vice*)
David I. Horowitz (DH 0921)
KIRKLAND & ELLIS LLP
777 South Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500

***Attorneys for Defendant Misao Hioki***